801 F.2d 200
 Matthew John GALAS, Sr., Dorothy Galas, Individually and on
Behalf of Their Minor Child, Matthew John Galas,
Jr., Plaintiffs-Appellants,
v.
Richard McKEE and the Metropolitan Government of Nashville,
Davidson County, Tennessee, Defendants-Appellees.
 No. 85-5270.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 15, 1986.
Decided Sept. 11, 1986.
 
 Barrett and Ray, Charles R. Ray, Paul Housch (argued), Nashville, Tenn., for plaintiffs-appellants.
 Mark C. Scruggs, James L. Charles (argued), Nashville, Tenn., for defendants-appellees.
 Before KENNEDY and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiffs appeal the decision of the district court granting summary judgment for defendants in this civil rights action brought under 42 U.S.C. Sec. 1983. On appeal the issue presented is whether the high-speed pursuit of the minor plaintiff by the defendant police officer or the pursuit policies of the Metropolitan Police Department violated the minor plaintiff's rights under the Fourth, Eighth or Fourteenth Amendments to the United States Constitution. Because we agree with the district court that no constitutional violation occurred, we affirm.
 
 I.
 
 2
 On March 16, 1983, Officer Richard McKee ("defendant officer") of the Metropolitan Nashville-Davidson County, Tennessee, Police Department observed a 1972 Oldsmobile automobile allegedly traveling well in excess of the speed limit at a speed the officer estimated to be between 65 and 70 miles per hour. By activating the blue lights and siren on the police motorcycle he was operating, Officer McKee signaled the driver of the Oldsmobile to pull over and stop. However, rather than stopping, the operator of the Oldsmobile accelerated, and a high-speed pursuit by Officer McKee ensued.
 
 
 3
 The pursuit, which reached speeds of 100 miles per hour, ended when the driver of the Oldsmobile lost control of his automobile, ran off the roadway and wrecked. Shortly after the accident, the operator of the Oldsmobile, thirteen year old Matthew John Galas, Jr. ("minor plaintiff" or "Johnnie"), was transported to the hospital for treatment of the injuries he sustained in the accident. His resulting injures were serious and permanent.
 
 
 4
 One year later, on March 16, 1984, Matthew John Galas, Sr., and Dorothy Galas, Johnnie's parents ("plaintiffs"), filed the instant action under 42 U.S.C. Sec. 1983 on their own behalf and on behalf of their son. As defendants, the Galases named Officer Richard McKee and the Metropolitan Government of Nashville, Davidson County, Tennessee ("the City"). In the complaint it was alleged that Officer McKee's conduct violated Johnnie's rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. On March 8, 1985, the district court granted defendants' motion for summary judgment.
 
 II.
 A. Fourth Amendment
 
 5
 Relying on Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), plaintiffs first argue that the continuance of a high-speed pursuit of a traffic offender until the pursuit is terminated by a crash of the offender's vehicle constitutes an unreasonable seizure in violation of the Fourth Amendment. In addressing this issue, the district court held that the pursuit did not constitute a seizure and that the conduct at issue did not involve the use of deadly force. The district court also held that the defendant officer's conduct was clearly not the proximate cause of the minor plaintiff's injuries. On appeal, plaintiffs urge that the defendant officer's decision not to stop the pursuit and merely allow the minor plaintiff to flee enhanced the possibility of a serious accident.
 
 
 6
 Although the analysis suggested by plaintiffs' argument may be helpful in determining state tort liability, it is inapposite in ascertaining whether the minor plaintiff's Fourth Amendment rights were violated. The Fourth Amendment protects against "unreasonable seizures," not unreasonable or even outrageous conduct in general. Thus, the threshold question which we must address has two parts. First, we must determine whether there was a seizure. Second, even assuming arguendo that a high-speed pursuit by a police officer is a seizure, we must decide whether it is an unreasonable method of seizing traffic offenders.
 
 
 7
 As recently noted by the Seventh Circuit, a "damage suit under [section 1983] is a tort damage action even though the duty the defendant is charged with having violated is created by the Constitution rather than by common law or a safety statute or regulation." Lossman v. Pekarske, 707 F.2d 288, 290 (7th Cir.1983); see also Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695-96, 61 L.Ed.2d 433 (1979); Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). If we conclude either that no seizure occurred or that the manner of seizure was reasonable, the Fourth Amendment will not have been violated, and the question of whether defendant's conduct enhanced the likelihood of the accident need not be addressed. On the other hand, if we conclude that the minor plaintiff's Fourth Amendment rights were violated, we must determine whether that constitutional violation was the proximate cause of plaintiff's injuries. If the constitutional violation occurred, but was not the proximate cause of plaintiff's damages, affirmance of the district court would be proper. Cf. Lossman, 707 F.2d at 290 (noting that a section 1983 action is a tort damage action and that "[a] plaintiff seeking tort damages cannot withstand summary judgment if he has sustained no actual damage....").
 
 1. Seizure
 
 8
 In the landmark decision of Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968), the Court stated, "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."
 
 
 9
 In the instant case, there was no exercise of physical force. Thus, the remaining question is whether the defendant officer, by a show of authority, restrained the liberty of the minor plaintiff. Clearly, during the initial stages of the pursuit when the minor plaintiff decided to flee rather than to obey the defendant officer's directive to stop, the minor plaintiff was not restrained. Just as clearly, when the pursuit terminated in an accident with personal injury to the minor plaintiff, he was not restrained by, or as a result of, the officer's show of authority. Rather, the minor plaintiff's inability to leave was because he wrecked his automobile, and no seizure occurred.
 
 
 10
 When the officer arrived at the scene of the accident, medical assistance was summonsed, and plaintiff was transported to the hospital. Thus, even if the defendant officer's conduct could be considered negligent, it did not violate the Fourth Amendment.
 
 
 11
 In summary, we hold that the reasonableness of a seizure or method of seizure cannot be challenged under the Fourth Amendment unless there was a completed seizure (that is, a restraint on the individual's freedom to leave), accomplished by means of physical force or show of authority. During the initial stages of the pursuit at issue here, plaintiff was not restrained at all. Rather than submitting to the show of authority, plaintiff chose to flee. During the latter stages--when plaintiff crashed--he was tragically not free to walk away. This restraint on plaintiff's freedom to leave, however, was not accomplished by the show of authority but occurred as a result of plaintiff's decision to disregard it.
 
 2. Reasonableness
 
 12
 Moreover, we come to the same result when we apply the second prong of the appropriate analysis--whether high-speed pursuits by police officers are a reasonable method of seizing traffic offenders. In order to determine the reasonableness, and thus the "constitutionality of [the method of] seizure '[wle must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). Courts are, however, "hesita[nt] to declare a police practice of long standing 'unreasonable' if doing so would severely hamper effective law enforcement." Id. 105 S.Ct. at 1705.
 
 
 13
 Applying the balancing test to the instant case, we conclude that the use of high-speed pursuits by police officers is not an unreasonable method of seizing traffic violators. The extent of the intrusion is minimal. Without question highspeed pursuits place the suspect, the officer, and the public in general at risk of death or serious bodily injury. In that respect high-speed pursuits are no different than the use of firearms to apprehend fleeing suspects. However, it is the intrusiveness of the officer's conduct which must be weighed. By engaging in high-speed pursuits, without more, police use absolutely no force. Similarly, the show of authority is de minimis. By activating his blue lights and siren, an officer directs a traffic violator to pull to the side of the road where the traffic violator can expect to be detained for a few minutes and released. When the traffic violator decides to flout that order and flee from the officer, and the officer responds by following the violator, the intrusiveness occasioned by the officer's conduct is slight.
 
 
 14
 On the other side of the scales we must balance the importance of the government's interest in justifying the intrusion. The government's interest here includes that of apprehending traffic offenders. For us to hold as a matter of constitutional law that police officers are foreclosed from pursuing traffic offenders who disregard their directives to pull over would encourage violators to flee. Moreover, to strip police officers of the authority to pursue traffic violators would not only severely hamper the effective enforcement of the traffic laws, it would also encourage offenders sought to be stopped for traffic offenses, but guilty of more serious crimes, to flee. See, e.g., Bell v. Ohio, 438 U.S. 637, 639-40, 98 S.Ct. 2977, 2979, 57 L.Ed.2d 1010 (1978) (where, by stopping the defendant for a defective muffler, a patrolman solved one murder-robbery-kidnapping and seemingly prevented a second robbery-kidnapping from escalating to murder); cf. Utah v. Bundy, 589 P.2d 760 (Utah 1979) (where a highway patrol officer apprehended the defendant, who was subsequently discovered to be a kidnapper, following the defendant's attempt to evade the officer by fleeing at a high rate of speed and running a stop sign).
 
 
 15
 Successful apprehension of offenders, on the other hand, encourages compliance. As was noted by Professor Lafave in a slightly different context:
 
 
 16
 it would seem, as provided in the ALI Code, that an officer "may use such force, other than deadly force, as is reasonably necessary to stop any person or vehicle or to cause any person to remain in the officer's presence." As the draftsmen point out,
 
 
 17
 it would be frustrating and humiliating to the officer to grant him an authority to order persons to stop, and then ask him to stand by while his order is flouted....
 
 
 18
 There is ground for concern that encounters in which moderate force is used may escalate into deadly force; but this possibility does not seem so serious as to warrant rejecting an authority which is essential to a coherent scheme of police powers.
 
 
 19
 3 W. Lafave, Search and Seizure, A Treatise on the Fourth Amendment, Sec. 9.2, at 32 (1978) (emphasis added and footnotes omitted) (quoting Model Code of Pre-Arraignment Procedures Sec. 110.2(3) (Proposed Official Draft 1975)).
 
 
 20
 In summary, we conclude that the minimal intrusion on a traffic offender's Fourth Amendment right occasioned by the officer's participation in a high-speed pursuit does not outweigh a longstanding police practice which we consider "essential to a coherent scheme of police powers." Accordingly, we hold that the use of high-speed pursuits to apprehend traffic violators is not unreasonable and, thus, not violative of the Fourth Amendment.
 
 B. Fourteenth Amendment
 
 21
 Plaintiffs' next argument is that the City's pursuit policies violate due process by conferring overly broad discretion upon traffic officers and thus infringe on suspected violators' fundamental right to life. In reviewing the constitutionality of the City's policy, we must first determine whether, as argued by plaintiffs, it infringes on the fundamental right to life. If the policy does infringe on a fundamental right, we will uphold the constitutionality only if (1) it promotes a compelling state interest, and (2) "the means chosen by the State to effectuate its purpose [are] 'narrowly tailored to the achievement of that goal.' "[1] Wygant v. Jackson Board of Education, U.S. ----, 106 S.Ct. 1842, 1846, 90 L.Ed.2d 260 (1986) (setting out strict scrutiny two-pronged test in equal protection context) (quoting Fullilove v. Klutznick, 448 U.S. 448, 480, 100 S.Ct. 2758, 2776, 65 L.Ed.2d 902 (1980)). However, if a police promotes public safety, as is the case here, and it does not infringe on a fundamental right, it is presumed valid and will be upheld unless the plaintiff "can demonstrate that there is no rational connection between the regulation ... and the promotion of safety of persons and property." Kelley v. Johnson, 425 U.S. 238, 247, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976).
 
 
 22
 In arguing that the City's policy infringes on his fundamental right to life, plaintiff relies heavily on this court's opinion in Garner v. Memphis Police Department, 710 F.2d 240 (6th Cir.1983), aff'd on Fourth Amendment grounds, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In Garner, we addressed the "constitutionality of Tennessee's fleeing felon statute ... under the Fourth, Eighth and Fourteenth Amendments." Id. at 241. In analyzing the issue under the due process clause of the Fourteenth Amendment, we began by recognizing that the right to life is a fundamental right. We then recognized, "Laws which infringe on fundamental rights must be 'narrowly drawn to express only the legitimate state interests at stake.' " Id. at 247 (quoting Roe v. Wade, 410 U.S. 113, 156, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973)). Since the statute at issue in Garner "authorize[d] police officers to use deadly force in order to capture unarmed suspects fleeing from nonviolent felonies," id, at 241, we concluded that the statute swept too broadly and thus violated due process. Id. at 247.
 
 
 23
 In stark contrast to the statute at issue in Garner, the policy challenged here does not permit officers to use deadly force to apprehend traffic violators. Rather, the policy provides, at most, that officers may pursue, that is, follow, suspects. The policy of following traffic offenders who refuse to obey an officer's directive to pull to the side of the road does not infringe on the right to life. Since, understandably, plaintiffs have not demonstrated, or even suggested, that the City's policy is not rationally based, we reject their due process challenge.
 
 C. Eighth Amendment
 
 24
 Plaintiffs' final claim is that police officers' use of highspeed pursuits to apprehend traffic offenders violates the cruel and unusual punishment clause of the Eighth Amendment. We find this argument completely without merit. It is well settled that the Eighth Amendment prohibition against cruel and unusual punishment is applicable only to those convicted of crimes. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); Ingraham v. Wright, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408-09, 51 L.Ed.2d 711 (1977); Roberts v. City of Troy, 773 F.2d 720, 722-23 (6th Cir.1985).
 
 III.
 
 25
 Accordingly, the judgment of the district court is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Although we do not find that a fundamental right of the minor plaintiff was implicated in the instant case, it could be argued that another less intrusive means of apprehension would have been possible. For example, it could be argued that in such cases all the officer need do is record the license number and apprehend the offender. This, however, at best (if the car is properly registered) would lead the officer to the owner of the car. The officer, who in most cases would have only seen the back of the offender's head, would be hard pressed to identify the offender. Offenders who chose to escalate the dangerousness of the offense would thus, in the vast majority of cases, go unapprehended
 For example, in the instant case, had Officer McKee recorded the license number of the 1972 Oldsmobile he was pursuing, he would have found the car registered to Johnnie's father. Johnnie's father, who would not have known about his son's unauthorized use of the car, when questioned about the incident would have disavowed any knowledge of it.