867 F.2d 611
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lamarr WEBBS, Plaintiff-Appellant,
v.
Douglas HYANS; and the City of Shaker Heights, Defendants-Appellees.
 No. 88-3180.
 United States Court of Appeals, Sixth Circuit.
 Feb. 7, 1989.
 
 Before MERRITT and MILBURN, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Lamarr Webbs appeals from the summary judgment granted by the district court in favor of the defendants in this action filed pursuant to 42 U.S.C. section 1983. For the reasons that follow, we reverse.
 
 I.
 
 2
 Webbs filed this action on May 23, 1986, asserting a violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution. In his complaint, he alleged that the defendant-appellee, Douglas Hyans, a police officer in the City of Shaker Heights, Ohio, effected an unreasonable seizure of his person when his motorcycle and the defendant's police cruiser collided during a high-speed chase. Webbs also raised a pendent state law claim for the intentional or negligent use of force.
 
 
 3
 After the depositions of several Shaker Heights police officers were taken,[1] the defendants moved for summary judgment on January 12, 1987. In response, Webbs filed a brief in opposition as well as numerous evidentiary submissions.
 
 
 4
 On January 28, 1988, the district court issued a Memorandum Opinion concluding that while a seizure did occur, Officer Hyans did not act unreasonably and, therefore, no constitutional violations occurred. The court also found no constitutional violation by the City of Shaker Heights and declined to exercise pendent jurisdiction on the remaining state law claim.[2] This timely appeal followed.
 
 
 5
 The incident which gives rise to this action occurred on May 29, 1985. Shaker Heights police officers Cherlynn Lewis and defendant Hyans observed Webbs riding a motorcycle without a helmet or license plate, both of which are misdemeanor traffic violations. Officer Lewis pursued Webbs with siren and flashers operating. Webbs initially attempted to elude Officer Lewis and ran at least one red light. He then turned onto a side street and stopped. Officer Lewis pulled alongside Webbs, ordered him to dismount his motorcycle, but when she began to exit her vehicle, Webbs suddenly started his motorcycle and sped away.
 
 
 6
 Officer Lewis radioed her dispatcher, advised police personnel of the circumstances, and continued in her pursuit of Webbs. Two other Shaker Heights cruisers joined the pursuit, generally traveling at speeds of forty to forty-five miles per hour. During the pursuit, Webbs dodged in and out of traffic and crossed the center line several times. Throughout the pursuit, the police cruisers employed sirens and flashers, attempted to block Webbs' path at least once, and waved for him to stop. At one point, Webbs struck the side of a building while traveling approximately thirty miles per hour. However, Webbs retained his balance and continued in his efforts to elude the police. In the last part of the pursuit, Webbs was driving his motorcycle on the sidewalk of East 155th, a residential street which terminates in a T-intersection with Harvard Street, while a Shaker Heights police cruiser, operated by defendant Hyans, was immediately parallel to Webbs on the street.
 
 
 7
 As both vehicles approached the T-intersection, the parties dispute what happened. The defendants contend that Hyans pulled onto a driveway apron in front of Webbs, and that Webbs suddenly swerved his motorcycle to the right, struck the police cruiser with the rear of his motorcycle, and fell to the ground. Webbs contends, however, that Hyans turned the police cruiser into a driveway, pursued the motorcycle down the sidewalk for a short distance, rammed it from the rear, and that he and his motorcycle then slid several feet down the sidewalk while pinned underneath the cruiser.
 
 
 8
 In addition to Webbs' affidavit wherein he contends that the police car rammed him from the rear, there is other evidence in the record to support his allegation. Tommie Berry, a resident of the neighborhood where the incident occurred, stated in his affidavit that he saw a police cruiser stopped on the sidewalk with a boy on a motorcycle in front of and partially under the cruiser. "He went outside and observed a scrape mark running along the sidewalk from a point at the rear of his house to a point near the front of his house where the cruiser and bike came to rest. The length of this mark was about fifty feet. Along the length of this mark he saw shreds of blue jeans imbedded in the sidewalk." J.A. at 29. He also stated that the skid mark passed over a concrete step leading to his house and that there were blood, tissue, and shreds of blue jean on the top front of this step. He supplied several photographs of the scene that were taken showing the scrape mark as well as the step.
 
 
 9
 Henry Smith, a resident of East 155th Street, also provided an affidavit. He stated that he went outside after hearing the sirens and "saw a police cruiser on the sidewalk alongside the house at the corner of East 155th St. and Harvard [Street] with a young man and a motorcycle lying on the sidewalk in front of the cruiser" and "he heard someone say, 'back it up.' " He then went inside, got his camera, and took photographs of the scene. The photographs, some of which are attached as exhibits, depict Webbs on the lawn in front of the left bumper of the cruiser, and depict the accident scene from the rear showing the cruiser sitting parallel to the street on the sidewalk and Webbs to the left front of the car.
 
 
 10
 The record also contains the affidavit of Cynthia Smith, who stated that she observed the scuff and tire marks along the sidewalk, blood spots at various points, and blue jean threads imbedded in the sidewalk along the mark and on the corner of the step. In addition, the record contains photographs of the motorcycle in question which were attached to and made a part of Webbs' affidavit. The photographs are alleged to be close-up views showing damage to the motorcycle as a result of the impact of the cruiser. The photographs show that the motorcycle's wheel is caved inward from the tire to its rim, strongly suggesting an impact from its rear, not its side.
 
 
 11
 The defendants concede that prior to the police pursuit of Webbs, he was wanted solely for the misdemeanor violations of riding a motorcycle without a helmet and riding on a city street while not displaying a license plate. The defendants also concede that they had no reason to believe that Webbs had committed a felony.
 
 II.
 
 12
 Under the Federal Rules of Civil Procedure, summary judgment should be entered only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See Shrader v. Diamond Int'l Corp., 833 F.2d 1210 (6th Cir.1987). In Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986), the Supreme Court explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 2512.
 
 
 13
 By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
 
 
 14
 As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict--"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."
 
 
 18
 Id. at 2510, 2512 (quoting Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442 (1872)) (emphasis in original). Moreover, the party that opposes a motion for summary judgment has the burden to come forth with requisite proof to support its legal claim, particularly where the opposing party has had an opportunity to conduct discovery. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986).
 
 
 19
 In reviewing a district court's ruling on a motion for summary judgment, this court's role is identical to that of the district court. Hand v. Central Transp., Inc., 779 F.2d 8, 10 (6th Cir.1985) (per curiam). All facts and inferences "must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1356-57 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).
 
 
 20
 Initially, we note that the district court failed to construe the facts in the light most favorable to the plaintiff. In describing the sequence of events that led up to the collision, the district court stated the facts in its opinion as follows:
 
 
 21
 Officer Hyans, now driving a lead police cruiser behind the motorcycle, was traveling parallel to plaintiff along East 155 Street. As the vehicles approached the intersection of East 155 Street and Harvard, Officer Hyans pulled in the last driveway on East 155 Street in an effort to block plaintiff's path. As Officer Hyans went up the driveway, the plaintiff swerved to the right and collided with the police cruiser. The rear wheel of the motorcycle collided with the left side fender of the cruiser. The motorcycle fell to the ground and both the motorcycle and the police cruiser slid along the sidewalk. The vehicles came to rest with the motorcycle just in front of the left side of the cruiser.
 
 
 22
 J.A. at 17-18. However, as was noted above, there is a dispute as to how the collision occurred, as Webbs contends that the police cruiser followed him onto the sidewalk and struck him from the rear. As was also noted above, the affidavits of Webbs and witnesses to the event, as well as photographs taken of the scene and the motorcycle, offer support for Webbs' version of the accident. Accordingly, for purposes of summary judgment, the district court erroneously construed the facts because it failed to consider the evidence in the light most favorable to plaintiff Webbs.
 
 
 23
 As earlier stated, the district court found that while a seizure did occur, Officer Hyans did not act unreasonably and, therefore, no constitutional violations occurred. In our view, under either version of the facts, a seizure occurred. However, a jury issue exists as to whether or not Officer Hyans' actions were reasonable under the facts and circumstances as determined by the jury.
 
 
 24
 The question in every Fourth Amendment case is one of reasonableness, and in the case of an an attempt to seize a fleeing suspect, the question goes to the reasonableness of the force used to effect the seizure. In making a determination of whether or not Hyans' actions were reasonable, a balancing test is to be applied. "We must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983). See also Galas v. McKee, 801 F.2d 200 (6th Cir.1986); Chesney v. Hill, 813 F.2d 754 (6th Cir.1987) (per curiam); and Michigan v. Chesternut, 108 S.Ct. 1975 (1988).
 
 III.
 
 25
 Accordingly, the summary judgment of the district court is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion. We express no view regarding the eventual outcome of this action.
 
 
 
 [1]
 The deposition of Officer Hyans has not been taken
 
 
 [2]
 The sole basis provided by the district court for entering judgment for the City was the court's conclusion that no constitutional violation occurred. While we hold that this conclusion was in error, we otherwise express no opinion as to the liability of the City