Joan MONTGOMERY, Individually and as Personal Representative of the Estate of Sannie Montgomery, Deceased, and Lee Montgomery, Individually, Plaintiffs,

v.

COUNTY OF CLINTON, MICHIGAN, Terry Haneckow, Individually as Sheriff of Clinton County, Stephen Coughlin and Mark Finnila, Individually and in their capacity as Deputy Sheriffs for the County of Clinton, Mark Steffes, Individually and in his capacities as Deputy Sheriff and Deputy Medical Examiner for the County of Clinton, Dr. James Grost, M.D., Individually and as Medical Examiner for Clinton County, all Jointly and Severally, Defendants.

No. L89–50002 CA.

United States District Court, W.D. Michigan, S.D.

July 30, 1990.

John Kaplansky, Southfield, Mich., for plaintiffs.

Richard Winslow, Cummings, McClorey, Davis & Acho, Battle Creek, Mich., for defendants.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

This case presents a four-count complaint growing out of plaintiffs' decedent's death.

The decedent Sannie Montgomery was killed when, in the course of fleeing two pursuing police vehicles, he lost control of the automobile he was driving and it left the roadway and crashed. The third amended complaint alleges in count I under 42 U.S.C. § 1983 that defendant Deputy Sheriffs Stephen Coughlin and Mark Finnila subjected the decedent to an unreasonable seizure of his person in violation of the Fourth Amendment and deprived him of life without due process of law; in count II under 42 U.S.C. § 1983 that Clinton County and Sheriff Terry Haneckow are liable for the deputies' wrongful actions insofar as such actions are attributable to county policy or custom or a lack of proper training or supervision; in count III under the Michigan Wrongful Death Act, M.C.L. § 600.2922, that the decedent's death was caused by the negligence of defendants Coughlin, Finnila and Clinton County; and in count IV that defendants Medical Examiner James Grost, M.D., and Deputy Medical Examiner Mark Steffes violated plaintiffs' First Amendment freedom to exercise their religion and violated Michigan law, M.C.L. § 52.205, by failing to notify them and secure their consent before ordering the performance of an unnecessary autopsy upon the body of the decedent, and that, insofar as they acted pursuant to policy or custom, Clinton County is also liable. Defendants now move for summary judgment.

## I

As to the material facts which form the basis for plaintiffs' federal claims, there is no genuine dispute. It appears that on January 7, 1987 at approximately 10:00 p.m., 16 year-old Sannie Montgomery was driving his mother's brand new 1987 blue Chevrolet Cavalier Z-24, westward on M-21 near Fowler in Clinton County, with friend Eric Miller as passenger. It is conceded that he was speeding. When approached by a Clinton County Sheriff Department patrol car, driven by defendant Coughlin, Montgomery accelerated, attempting to elude the patrol car. A high speed chase ensued. As Coughlin pursued from behind, a second deputy, defendant Finnila confronted Montgomery frontally in Fowler, positioning his patrol car "head-on" in Montgomery's lane of traffic. Montgomery swerved around Finnila's patrol car and continued westward out of Fowler, with Finnila and Coughlin in pursuit. When Finnila attempted to negotiate a left-hand turn at high speed following Montgomery onto Jones Road, he drove off the road into the ditch. Coughlin continued the chase, eventually eastward down a dirt road, Townsend. Coughlin was approximately one-half mile behind when he observed the Montgomery vehicle make what appeared to be a left-hand turn at the next intersection, Grange Road. When Coughlin turned left at Grange Road, however, the Montgomery vehicle was no longer in sight. After driving northward on Grange for almost a mile, Coughlin returned to Townsend, where he found the Montgomery vehicle resting on the driver's side against a utility pole almost 300 feet east of Grange. The passenger Miller survived the accident, but Montgomery died at the scene, having sustained massive head and upper body injuries.

Subsequently, an autopsy was performed upon Montgomery's body pursuant to the order of Medical Examiner Grost. It appears plaintiffs, the decedent's parents, were not notified before the autopsy was performed. The decedent's mother, Joan Montgomery, is Jewish, objects to the practice of autopsy on religious grounds, and would not have consented to the performance of an autopsy on her son's body.

## II

Count I of the complaint actually contains two claims under 42 U.S.C. § 1983: (1) that the high speed chase constituted the use of excessive force which ultimately resulted in an unreasonable "seizure;" and (2) that the high speed chase constituted the use of excessive force which ultimately resulted in a deprivation of life without substantive due process. In *Graham v. Connor*, 490 U.S. ——, —— - ——, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, 454–55 (1989), the United States Supreme

Court recently made it clear that only the first of these two claims is appropriate:

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process" must be the guide for analyzing these claims.

See also *Pleasant v. Zamieski*, 895 F.2d 272, 275 (6th Cir.1990).

■ In order to prevail on their claim that the decedent was subjected to an unreasonable seizure, plaintiffs must establish first that there was a "seizure." "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). However, the restraint of freedom must be accomplished through means intentionally applied by the officer. "Violation of the Fourth Amendment requires intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, ——, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628, 635 (1989).

It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied.

*Id.* In *Brower*, the Supreme Court reversed the dismissal of a Fourth Amendment claim arising out of a high speed police chase which culminated in the death of the fleer, where the police allegedly

(1) caused an 18–wheel tractor-trailer to be placed across both lanes of a two-lane highway in the path of Brower's flight, (2) "effectively concealed" this road-block by placing it behind a curve and leaving it unilluminated, and (3) positioned a police car, with its headlights on, between Brower's on-coming vehicle and the truck, so that Brower would be "blinded" on his approach.

*Id.*, 489 U.S. at ——, 109 S.Ct. at 1380, 103 L.Ed.2d at 634. These allegations were held to make out a "seizure" because the fleer was meant to be stopped by the physical obstacle of the roadblock—and he was so stopped when he collided with it. The *Brower* court was careful, however, to distinguish such facts from the analogous situation of a police chase in which the suspect unexpectedly loses control of his car and crashes. Referring to this "analogous situation," the court observed that no seizure occurred where "[t]he pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash." *Id.*, 489 U.S. at ——, 109 S.Ct. at 1381, 103 L.Ed.2d at 635. Further, the court cited with approval the Sixth Circuit's decision in *Galas v. McKee*, 801 F.2d 200 (6th Cir. 1986), where the above-described analogous situation was held not to constitute a seizure.

Consistent with these controlling authorities, the Court concludes the undisputed material facts of this case fail as a matter of law to establish a "seizure."[1] Without

---

**1.** Plaintiffs argue that defendant Finnila's attempt to create a roadblock with his patrol car is precisely the sort of conduct which may be recognized as unreasonable, citing *Brower* and *Reed v. Allegan County*, 688 F.Supp. 1239 (W.D. Mich.1988). Yet, even if plaintiffs' characterization of Finnila's conduct is accepted, the fact remains that, in contrast to *Brower* and *Reed*, Finnila's "roadblock" did not stop the decedent, did not effectuate a seizure, and was not causally related to his death.

a seizure, there is no Fourth Amendment violation and, therefore, no need to even consider whether defendants' conduct was unreasonable.

> The Fourth Amendment protects against "unreasonable seizures," not unreasonable or even outrageous conduct in general.
>
> .... [T]he reasonableness of a seizure or method of seizure cannot be challenged under the Fourth Amendment unless there was a completed seizure....

*Galas, supra,* 801 F.2d at 202, 203.

■ Nonetheless, consideration of the reasonableness of defendants' conduct would not change the present result. It appears the means used by defendants Coughlin and Finnila, consisting of nothing essentially beyond high speed pursuit on predominantly rural roads, were in no respect unreasonable. This is the conclusion reached by the *Galas* court upon facts materially indistinguishable from those here presented:

> In summary, we conclude that the minimal intrusion on a traffic offender's Fourth Amendment right occasioned by the officer's participation in a high-speed pursuit does not outweigh a longstanding police practice which we consider "essential to a coherent scheme of police powers." Accordingly, we hold that the use of high-speed pursuits to apprehend traffic violators is not unreasonable and, thus, not violative of the Fourth Amendment.

801 F.2d at 204. The *Brower* court, by implication at least, agreed. See 489 U.S. at ——, 109 S.Ct. at 1381–82, 103 L.Ed.2d at 636. Further, the *Galas* reasoning was tacitly reaffirmed by the Sixth Circuit in *Jones v. Sherill,* 827 F.2d 1102, 1106 (6th Cir.1987).

There being no genuine issue as to any material fact, and it appearing that no "seizure" took place and that defendants did not act unreasonably, defendants are entitled to summary judgment upon the Fourth Amendment claim contained in count I.

## II

In count II, plaintiffs assert Clinton County and Sheriff Haneckow are liable for the constitutional wrong alleged in count I to have been committed by Coughlin and Finnila. Respondeat superior or vicarious liability does not attach under 42 U.S.C. § 1983 for the deprivation of a federally protected civil right under color of state law. *Canton v. Harris,* 489 U.S. 378, ——, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412, 424 (1989). However, if the alleged violation is the result of execution of the County's policy or custom or is the result of training so deficient as to amount to deliberate indifference to the rights of others, then liability may attach to the County or the Sheriff. *Id.,* 489 U.S. at ——, ——, 109 S.Ct. at 1202, 1204, 103 L.Ed.2d at 424, 426. Yet, there must be a direct causal link between the policy, custom or deficient training and the alleged constitutional violation. *Id.,* 489 U.S. at —— —— ——, 109 S.Ct. at 1205–06, 103 L.Ed.2d at 427–28.

Here, the question of a direct causal link is rendered moot by the Court's finding *supra* that Coughlin and Finnila are guilty of no constitutional violation. The asserted liability of the County and Sheriff is premised upon their alleged legal responsibility for Coughlin's and Finnila's actions. If Coughlin and Finnila inflicted no constitutional injury, though their conduct was enabled by policy, custom or deficient training, the County and Sheriff could bear no liability. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *Britt v. Little Rock Police Dep't,* 721 F.Supp. 189, 196 (E.D. Ark.1989) and cases cited therein. It follows that the claim contained in count II must also be dismissed.

## IV

■ Plaintiffs' final federal claims revolve around performance of the autopsy and are contained in count IV. First, plaintiff Joan Montgomery, who is Jewish, alleges the performance of the autopsy without her prior notice and consent infringed her First Amendment right to freely exercise her religion. She believes autopsies

are offensive to the tenets of Judaism. Further, she contends the autopsy was unnecessary, because the cause of death was obvious. For Medical Examiner Grost and Deputy Medical Examiner Steffes to authorize the autopsy under such circumstances without even seeking her consent, as next of kin, is said to have violated her First Amendment right.

It appears defendant Steffes was present at the scene of the accident. He notified defendant Grost of the death and circumstances. Grost authorized the autopsy, which was performed the next day.[2] Steffes also delegated to Finnila the responsibility for notifying the decedent's next of kin, which notice presumptively included notice that an autopsy might be performed. When Finnila contacted plaintiffs, however, he apparently neglected to notify them of the impending autopsy. Thus, no objection was made or received before the autopsy was completed. Neither Grost nor Steffes nor Dr. Ronald Horowitz, the pathologist who performed the autopsy, had any reason to know there was an objection.[3]

Plaintiff Joan Montgomery is described in plaintiffs' brief as a conservative Jew who is "adamantly opposed to autopsies." She did not avidly practice her faith, however. Her husband, who is not Jewish, indicates she has not attended a synagogue or Jewish temple for religious purposes within the last ten years. The only evidence presented which connects her objection to her faith is her deposition statement: "I think I was raised in a religion that did not believe in it [autopsy]." Joan Montgomery Dep. Tr. p. 20.

Indeed, it appears the Jewish religion generally holds that the human body should not be defiled. Rabbi Mark Washofsky Dep. Tr. p. 60. An autopsy may constitute defilement of the body if not performed for good and sufficient reason. *Id.* Under conservative Judaism, a good and sufficient reason is made out where the autopsy is ordered by the civil authorities in the case of accidental or violent death. See *id.*, p. 46; Rabbi Michael Rascoe Aff. p. 1; Rabinowicz, *A Guide to Life: Jewish Laws and Customs of Mourning,* p. 23; Lamm, *The Jewish Way in Death and Mourning,* pp. 10–11.

Thus, it appears the present autopsy, authorized by the county medical examiner in accordance with Michigan law, in the case of an accidental or violent death, under circumstances which rendered autopsy necessary to determine the cause of death, see Horowitz Dep. Tr. pp. 17–18, was not actually in contravention of the religious tenets of the faith claimed by Joan Montgomery. To the extent her *personal* objection is broader than her religion-based objection, as reflected in her deposition testimony, a different question is posed, but one not relevant to her claim that she has been denied freedom to exercise her religion. *Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972) (protection of Free Exercise Clause applies only to claims rooted in religious beliefs). Yet, as observed by Rabbi Washofsky,

> The legal technicalities surrounding the permissibility of an autopsy are indeed obscure to the average person. The average person knows very little of technical rabbinic argument. The average person is much more likely to know that you don't fool with the body, you don't cut the body up.

Dep.Tr. p. 32. Joan Montgomery's beliefs and understandings of Jewish law, though perhaps somewhat confused, may nonetheless be genuine and entitled to respect. It is not for the Court to question the validity of one's interpretation of religious beliefs or practices, or to determine the plausibility of a religious claim. *Employ-*

---

**2.** Under Michigan law, the county medical examiner must investigate the cause of death in all cases of persons who have come to their death by violence. M.C.L. § 52.202. In discharging this responsibility, the medical examiner may direct an autopsy to be performed. M.C.L. § 52.205(3). After diligent effort to notify the next of kin of the deceased, the medical examiner may order the autopsy with or without their consent. M.C.L. § 52.205(4).

**3.** Steffes admits he knew plaintiff Joan Montgomery was Jewish, but there is no evidence that he was familiar with the objection of conservative Judaism to autopsy.

*ment Division, Dep't of Human Resources of Oregon v. Smith,* 494 U.S. ——, ——, 110 S.Ct. 1595, 1604, 108 L.Ed.2d 876, 891 (1990). Accordingly, the Court assumes for present purposes, that the performing of the instant autopsy impinged in some way upon Joan Montgomery's freedom to exercise her religion.

■■■ The Free Exercise Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, protects the right to believe and profess whatever religious doctrine one desires. *Employment Division, supra,* 494 U.S. at ——, 110 S.Ct. at 1598–99, 108 L.Ed.2d at 884. It excludes all governmental regulations of religious *beliefs. Id.* It also restricts governmental regulation of religious *practices. Id.,* 494 U.S. at —— – ——, 110 S.Ct. at 1598–1600, 108 L.Ed.2d at 884–85. In general, "[t]he free exercise inquiry asks whether the government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling interest justifies the burden." *Hernandez v. Commissioner of Internal Revenue,* 490 U.S. ——, ——, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766,

786 (1989). In *Employment Division, supra,* however, the Supreme Court recently refined this rule, holding that generally applicable, religion-neutral laws that have the effect of burdening a particular religious practice need not be justified by a compelling governmental interest. —— U.S. at —— – ——, 110 S.Ct. at 1603–06, 108 L.Ed.2d at 890–93. As long as the burden imposed is not the object, but merely the incidental effect of a generally applicable and otherwise valid law, the First Amendment is not offended. *Id.,* —— U.S. at ——, 110 S.Ct. at 1600, 108 L.Ed.2d at 885.

There is no contention that the laws under which the autopsy was authorized are other than generally applicable and religion-neutral. Similarly, there is no contention that the authorization itself was other than religion-neutral. The religion of the decedent and of his next of kin played no role in the decision and actions of the defendants.[4] It follows then, by implication of *Employment Division,* that defendants' actions need only have been reasonably related to a legitimate governmental objective.[5]

**4.** Of course, it is plaintiffs' position that religious beliefs *should* have been considered. The Court responds in two ways. First, the Court agrees: local officials making decisions concerning the care and disposition of dead bodies ought to proceed conscientiously and with great sensitivity to the emotional and religious sensibilities of the next of kin. It is quite another matter, however, to hold that, when they fail to so act, an injury of constitutional dimension results. As the Supreme Court observed in *Employment Division,* "to say that a nondiscriminatory religious-practice exemption is permitted, or even that it is desirable, is not to say that it is constitutionally required ..." —— U.S. at ——, 110 S.Ct. at 1606, 108 L.Ed.2d at 893.

Second, it appears it *was* the policy or practice of Medical Examiner Grost to consider personal or religious objections to autopsy and to explain his purposes before proceeding. Had plaintiffs' objection been made known, it might very well have been respected in some manner. The autopsy was performed not in intentional derogation of, or even with deliberate indifference to, Joan Montgomery's wishes, but in simple ignorance thereof. That plaintiffs may have been denied an opportunity to voice objection due to a failure of notice may be attributable to the negligence of Deputy Finnila, which is regrettable, but hardly implicates a constitutional wrong. Besides, Finnila is not named as a

defendant in this claim. The claim may be construed as asserting the County is liable for Finnila's actions because taken pursuant to policy or custom. However, the testimony of Dr. Grost indicates the failure to give notice of the impending autopsy was contrary to policy or custom. Dep.Tr. pp. 25–26. To the extent the claim may be construed as asserting the County is liable for Finnila's actions because his training was defective, it falls short again. Under such a theory, the County can be held liable only if training is so inadequate as to reflect deliberate indifference to others' constitutional rights. *Canton v. Harris, supra,* 489 U.S. at ——, 109 S.Ct. at 1207, 103 L.Ed.2d at 429. While it may be true that Finnila and Steffes should have been better instructed regarding the need to notify of autopsy and the possibility of religious sensibilities, any deficiency in training can hardly be characterized as deliberate indifference to others' constitutional rights (a) where the asserted constitutional right is ill-defined, flexible and conditional, coming into play only with respect to a small minority of persons, and (b) where, under Michigan law, the consent of the next of kin to the autopsy is ultimately unnecessary.

**5.** None of the cases cited by plaintiffs in support of stricter scrutiny of defendants' actions recog-

Plaintiffs do not challenge the legitimacy of the government's interest in ascertaining, through a medical examiner investigation, the cause of death in a case involving police pursuit and a violent accidental death. They argue an autopsy was superfluous to this purpose, because the cause of death was patently obvious. This argument does not create a genuine issue of material fact in the face of the otherwise unrefuted showing made by defendants. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.) The deposition testimony of pathologist Horowitz and of pathologist Laurence Robert Simson, Jr., M.D., and the affidavit of Stephen Cohle, M.D., Kent County Medical Examiner, all indicate that, under the circumstances, performance of an autopsy was a necessary or at least reasonable means of ascertaining cause of death. Accordingly, the Court concludes defendants' authorization of the autopsy, in accordance with Michigan law, was reasonably related to a legitimate governmental purpose. The incidental effect upon Joan Montgomery's practice of her religion, though regrettable, does not offend the First Amendment.

Hence, the claims contained in count IV, alleging that defendants Steffes and Grost are liable in their individual and official capacities and that the County is liable for their actions taken pursuant to policy or custom or grossly deficient training, must be dismissed.

### V

The Court having thus disposed of all of plaintiffs' federal claims, the basis for this Court's pendent subject matter jurisdiction over the claims brought under state laws, has ceased. Accordingly, the pendent state claims must be dismissed without prejudice. An order consistent with this opinion shall issue forthwith.

### ORDER OF THE COURT

In accordance with the Court's written opinion issued on July 30, 1990,

IT IS HEREBY ORDERED that defendants' motion for summary judgment is GRANTED;

IT IS FURTHER ORDERED that defendants are awarded JUDGMENT in their favor as to the claims asserted under federal law contained in counts I, II and IV;

IT IS FURTHER ORDERED that the claims asserted under state law contained in counts III and IV are DISMISSED, without prejudice, for lack of subject matter jurisdiction.

nizes the more recent rule of *Employment Division,* which is binding. See in particular *You Vang Yang v. Sturner,* 728 F.Supp. 845 (D.R.I. 1990); *Snyder v. Holy Cross Hospital,* 30 Md. App. 317, 352 A.2d 334 (1976).