917 F.2d 24
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jeffrey R. CONNER, Plaintiff-Appellant,
v.
William K. DUKES, Individually and as Police Officer of City
of Madisonville, O.L. Lantaff, Mayor, City of Madisonville,
Kentucky, City of Madisonville Kentucky, J.E. Bowles, Chief
of Police, City of Madisonville, Kentucky, Officer K.
Leggett, Sgt. E. Hinchee, Officer R. Lutz, Officer R.
DeArmond, Defendants-Appellees.
 No. 90-5199.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1990.
 
 Before MILBURN, BOGGS and SUHRHEINRICH, Circuit Judges
 PER CURIAM.
 
 
 1
 Plaintiff Jeffrey Conner appeals from a grant of summary judgment for the defendants in his Sec. 1983 suit alleging a deprivation of his fourth and fourteenth amendment rights when he was chased by a police car at high speeds. Because this circuit has already held that a plaintiff pursued by police at high speeds is neither "seized" within the meaning of the fourth amendment, nor deprived of a liberty interest without due process of law in violation of the fourteenth amendment, we affirm the district court's grant of summary judgment.
 
 
 2
 * Jeffrey Conner was severely injured when the motorcycle on which he was riding crashed into a tree. Conner was being pursued at a high rate of speed by Madisonville, Kentucky police officer William K. Dukes at the time of the crash. Conner crashed because he was unable to negotiate a turn during the high-speed chase.
 
 
 3
 The chase began when Conner pulled in front of Dukes as Conner was leaving the parking lot of an apartment complex at 1:15 a.m.. Officer Dukes noticed that Conner's motorcycle lacked a taillight. Dukes also believed Conner was driving under the influence of alcohol. Dukes activated his blue lights in order to signal Conner to pull over and stop. Conner did not stop: instead, he accelerated quickly to avoid Officer Dukes.
 
 
 4
 Officer Dukes immediately gave chase, pursuing Conner through residential sections of Madisonville. Both vehicles raced along at speeds up to 75 miles per hour.
 
 
 5
 Officer Dukes maintained radio contact with his dispatcher and with his supervisor, Sergeant Hinchee. A Madisonville citizen, Tommy Corbitt, swears in an affidavit that he was listening to Dukes's communications with his superiors on Corbitt's police scanner. Corbitt states that Dukes was told by Hinchee several times to break off the chase and obtain a warrant if Dukes knew who the suspect was. Corbitt says Dukes ignored Hinchee's suggestion and responded that his radio reception was breaking up. Corbitt also states that the two sped past him as he watched at an intersection with Woodlawn Road, with Dukes no more than ten feet behind Conner's motorcycle. Conner lost control of his motorcycle at a turn at the top of the hill on Woodlawn Road, above the intersection where Corbitt was watching.
 
 
 6
 Dukes testified in a deposition that he was never within ten feet of Conner. Dukes testified that he followed Conner by fifty feet at all times, and he was occasionally as far as 200 feet behind Conner. Dukes says he was five to ten car lengths behind Conner when Conner lost control of his bike.
 
 
 7
 Conner argues on appeal that the grant of summary judgment was wrong because he provided the court with material facts that, if true, would permit him to recover. The facts on which Conner relies are those provided by the affidavit of Tommy Corbitt. Conner argues that Officer Dukes's alleged close pursuit of him at high speed, as described by Corbitt, effectively deprived him of his ability to stop the chase without suffering serious injuries. This foreclosure of his options is alleged by Conner to be a "seizure" within the meaning of the fourth amendment. Conner also alleges that this "seizure" was an unreasonable application of deadly force in violation of Tennessee v. Garner, 417 U.S. 1 (1985). Finally, Conner argues that Dukes's alleged close pursuit also deprived him of his right to liberty under the fourteenth amendment without due process of law.
 
 
 8
 The district court held that Conner's allegations, even viewed in their most favorable light, could not constitute either an unreasonable seizure in violation of the fourth amendment or a deprivation of a liberty interest in violation of the fourteenth amendment. The court relied on our holdings in Galas v. McKee, 801 F.2d 200 (6th Cir.1986), Cameron v. City of Pontiac, 813 F.2d 782 (6th Cir.1987), and Jones v. Sherrill, 827 F.2d 1102 (6th Cir.1987), in reaching its result. Our task is to decide if the district court correctly interpreted our holdings in those cases, and whether as a result plaintiff's contentions fail to state a claim under Sec. 1983. Our standard of review for such questions of law is, of course, de novo.
 
 II
 
 9
 This is not the first time this court has faced a claim that a high-speed chase of suspected traffic offenders by police officers constitutes an unreasonable seizure in violation of the fourth amendment. On each of the three previous occasions on which we have faced this question we have held that such a chase is not the equivalent of a seizure within the meaning of the fourth amendment. While Conner correctly notes that we have not previously confronted a chase where the police officer approached as close as Dukes is alleged to have been to Conner, we do not believe that the constitutionality of a police chase depends upon the distance between the officer and the offender.
 
 
 10
 Our opinions in Galas, Cameron, and Jones all held quite clearly that police high-speed chases by their nature cannot rise to the level of a "seizure" under the fourth amendment. Chases are not "seizures" because the decision to initiate the chase is made by the offender when he attempts to flee. "Clearly, during the initial stages of the pursuit when the [offender] decided to flee rather than to obey the defendant officer's directive to stop, the [offender] was not restrained." Galas, 801 F.2d at 203.
 
 
 11
 While the test of whether a seizure has occurred is whether a person reasonably believes that "he was not free to leave" the officer's presence, United States v. Mendenhall, 446 U.S. 544, 554 (1980), this test was developed to answer a different fourth amendment question than we face here. The Mendenhall test was developed to determine at what time the probable cause required for a seizure should be measured, not to determine whether, as here, a seizure has occurred whose reasonableness need be assessed. See Michigan v. Chesternut, 486 U.S. 567, 577 (1988) (Kennedy and Scalia, JJ. concurring) ("It is at least plausible to say that whether or not the officers' conduct communicates to a person a reasonable belief that they intend to apprehend him, such conduct does not implicate Fourth Amendment protections until it achieves a restraining effect"). The Supreme Court has addressed the question of when a fourth amendment seizure occurs in the context of a police pursuit, and has held that a seizure for those purposes can occur only when the officer restrains a citizen's liberty through the use of "means intentionally applied." Brower v. County of Inyo, ---, U.S. ---, ----, 109 S.Ct. 1378, 1381 (1989). It naturally follows from this premise that an offender cannot claim that his liberty was restrained while fleeing.
 
 
 12
 Focusing on the end of the chase does not alter the analysis. If the chase concludes because of a crash, as did the chase in Galas, the resultant restraint on liberty again did not arise because of any act by the officer. "Rather, the [offender's] inability to leave was because he wrecked his automobile, and no seizure occurred." Galas, 801 F.2d at 203. Since a person is "seized" under the fourth amendment only when the officer acts to restrain that person, we held in Jones : "[A] high-speed pursuit of a traffic offender which terminates in an accident does not constitute a seizure of the offender because no physical force or show of authority on the part of the officer caused the restraint on the offender's liberty." Jones, 827 F.2d at 1104.
 
 
 13
 Galas and its reasoning were cited with approval by the Supreme Court in Brower :
 
 
 14
 The pursuing police car [in Galas ] sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means--his loss of control of the vehicle and the subsequent crash. If, instead of doing that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.
 
 
 15
 Brower, --- U.S. ----, ----, 109 S.Ct. at 1381. Although this statement is dicta, it nevertheless demonstrates that the Supreme Court regards with approval this circuit's analysis of what constitutes a seizure within the meaning of the fourth amendment.
 
 
 16
 This court chooses not to reconsider its holdings in Galas and Jones. Plaintiff's fourth amendment claim was rightfully disposed of on summary judgment because no high-speed police pursuit standing alone can constitute a seizure under the fourth amendment.
 
 
 17
 Although we need not reach the issue of the "reasonableness" of Dukes's actions because we have found that they can not constitute a fourth amendment seizure, we note that we have also previously decided that high-speed police pursuits are "reasonable" under the fourth amendment. This court in Galas confronted the question of whether a high-speed pursuit, assuming arguendo that it constitutes a seizure, is "reasonable" under the fourth amendment. We held that "high-speed pursuit by police officers is not an unreasonable method of seizing traffic offenders." Galas, 801 F.2d at 203. Conner has not advanced an argument which compels us to reconsider this holding.[1]
 
 
 18
 Conner's fourteenth amendment claim also has been disposed of previously by this court. Conner argues that Dukes's gross negligence in the manner in which he carried out the pursuit deprived him of a liberty interest protected by the fourteenth amendment. We established in Nishiyama v. Dickson County, Tennessee, 814 F.2d 277, 282 (6th Cir.1987), that a party can state a claim under Sec. 1983 when the party shows that the officer:
 
 
 19
 [I]ntentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow.
 
 
 20
 This court in Jones considered the application of the Nishiyama standard to high-speed police pursuits. We held that "high-speed pursuit is a constitutionally permissible method of apprehending traffic offenders." Jones, 827 F.2d at 1106. We noted there that police officers must protect the public from dangerous or potentially dangerous drivers. When those drivers choose to evade police attempts to stop them, the police act reasonably when they minimize the danger to the general public and pursue the driver until he stops. Jones, 827 F.2d at 1107. Again, Conner does not advance any arguments to cause us to reexamine our holding.
 
 
 21
 The district court's grant of summary judgment on all issues to the defendant is hereby AFFIRMED.
 
 
 
 [1]
 Conner did contend at oral argument that the recent Supreme Court case of Graham v. Connor, 109 S.Ct. 1865 (1989), compels us to find that the use of police cars in high-speed pursuits is "unreasonable" under the Garner analysis. Connor does not compel such a finding. The Court in Connor merely made clear that the fourth amendment's "objective reasonableness" test applies when claims of excessive force are made in the context of a Sec. 1983 suit involving a seizure of a citizen not incarcerated at the time of the application of the force. We have already decided that a police pursuit is "reasonable" under the fourth amendment "objective reasonableness" standard mandated by Connor