**Bruce TAGSTROM, Plaintiff,**

v.

**Marvin POTTEBAUM, William Enockson, John Doe, Gerald Donovan, J.R. Castner, and the City of Sioux City, Defendants.**

**No. C 84–4123.**

United States District Court,
N.D. Iowa, W.D.

July 8, 1987.

Stanley E. Munger, Sam S. Killinger, Sioux City, Iowa, for plaintiff.

Doug Phillips, A.J. Stoik, James Cosgrove, Paul Lundberg, James Abshier, George Carroll, Sioux City, Iowa, for defendants.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes to the Court on a motion for partial summary judgment filed on behalf of all defendants.[1] The case arises from the pursuit of the plaintiff by Sioux City police officers and a Woodbury County deputy through the streets of Sioux City, a resulting collision, and injuries which the plaintiff suffered. This motion seeks summary judgment against all counts arising under 42 U.S.C. § 1983 (1982). The defendants do not seek summary judgment on the pendent state law claims. For the reasons stated below, the Court grants summary judgment against Counts I, II and IV of the plaintiff's complaint which allege that his Fourth, Fourteenth and Eighth Amendment rights were violated in the pursuit and collision. However, the Court grants in part and denies in part the defendants' motion with regard to Count III, which alleges that his constitutional rights were denied by an intentional denial or delay of medical treatment following the accident. The motion is granted with regard to Defendants Pottebaum, Donovan, Castner and Sioux City. The motion is denied with regard to Defendants Enockson and Doe.

The events which give rise to this suit began at approximately 2:00 on the morning of April 7, 1984. The plaintiff was riding a motorcycle through western Sioux City when Defendant Pottebaum, a Sioux City police officer, saw the plaintiff go through a stop sign without stopping and noticed that his headlight was not on. The plaintiff veered to avoid a collision with another vehicle and laid his motorcycle on its side in the intersection. Defendant Pottebaum stopped and got out, but the plaintiff picked up his bike and took off. Pottebaum gave pursuit and was led on an eight-mile tour throughout most of western and northern Sioux City at speeds of 70 to 80 miles an hour. Two roadblocks were set up to stop the plaintiff, but he evaded each one. At one time approximately six or seven squad cars were involved in the chase. The chase ended on Jackson Street near the downtown area when the plaintiff ran into a pickup truck driven by Third-Party Defendant Louis Landanskas, and Defendant Pottebaum's car collided with a row of parked cars. According to witnesses' testimony, the plaintiff was "wrapped around a tree" and was believed to be dead. (Deposition of Joe Long at 7, deposition of Enockson at 13). An ambulance was called for the plaintiff and Pottebaum, who laid apparently unconscious in his car. (Deposition of Long at 7). Several witnesses have testified that a citizen and unnamed police officers attempted to aid the plaintiff, and an onlooker was quoted as shouting to police, "To hell with the cop. Take care of that guy over there." (Deposition of Long at 8).

Summary judgment should not be entered unless the record indicates that there is no "genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). It is a procedure which advances the salutary objective of avoiding useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment has been made and properly supported, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or oth-

---

1. While the plaintiff initially sued Woodbury County and several named and unnamed Woodbury County officials, the plaintiff voluntarily dismissed this portion of his action on November 16, 1984. He filed a First Amended Complaint on February 26, 1987 which again names the Woodbury County defendants, but does not appear to have served this complaint upon those defendants or their attorneys. Thus, the Court will presume that the Woodbury County defendants were inadvertently named in the new complaint.

erwise, must set forth specific facts showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981). Where the moving party establishes the absence of any genuine issue of material fact and the opposing party submits no evidence in rebuttal, summary judgment is justified. *Stovall v. City of St. Louis,* 614 F.2d 619, 621 (8th Cir. 1980).

### The Pursuit

■ There is no doubt in the Court's mind that a genuine issue of fact exists concerning the wisdom of chasing a motorcyclist through an urban and residential area at 70 to 80 miles per hour. The question raised by the defendants' motions, however, is whether a genuine issue of material fact exists concerning the constitutionality of the pursuit.[2] The primary difficulty facing the plaintiff is finding a source for such a right within the Constitution. His complaint rests on the Fourth, Eighth and Fourteenth Amendments. To consider the pursuit as a Fourth Amendment violation, the Court must find that it constituted an unreasonable search or seizure. To consider it as an Eighth Amendment violation, the Court must find that it is a form of cruel and unusual punishment. To consider it as a Fourteenth Amendment violation, the Court must find that it deprived plaintiff of liberty or property without due process.

■ In *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court held that an unreasonable "seizure" occurred when a police officer shot an unarmed fleeing suspect when it was unnecessary to prevent his escape and the officer lacked probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or to others. 471 U.S. at 3, 105

S.Ct. at 1697. If Officer Pottebaum had shot the plaintiff, *Garner* would permit the Court to find that a seizure had occurred. But can a chase which results in a collision constitute a seizure? The plaintiff contends that he can show that the chase created a risk of death or serious injury to the plaintiff which was as high as the risk created by a pistol shot. Quoting *Garner,* he contends that the use of such potentially deadly tactics is unconstitutional because it "frustrates the interests of the individual, and of society, in judicial determination of guilt and punishment." 471 U.S. at 9, 105 S.Ct. at 1700. However, in *Garner,* the Supreme Court found that the suspect was seized because the officer restrained the freedom of the suspect to walk away by shooting him. The other considerations referred to by the plaintiff were related to the separate question of whether that seizure was unreasonable. In *Galas v. McKee,* 801 F.2d 200, 203 (6th Cir.1986), the Sixth Circuit addressed a nearly identical case, and found that no seizure had occurred:

> In summary, we hold that the reasonableness of a seizure or method of seizure cannot be challenged under the Fourth Amendment unless there is a completed seizure (that is, a restraint on the individual's freedom to leave), accompanied by means of physical force or show of authority. During the initial stages of the pursuit at issue here, plaintiff was not restrained at all. Rather than submitting to the show of authority, plaintiff chose to flee. During the latter stages—when plaintiff crashed—he was tragically not free to walk away. This restraint on plaintiff's freedom to leave, was not accomplished by the show of

---

**2.** The Court recognizes that the constitutional rights allegedly violated by the pursuit were not clearly established in 1984 and that the individual defendants are therefore entitled to qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, this qualified immunity would not affect the plaintiff's claim against the City of Sioux City. Furthermore, the Supreme Court

expects that courts will not avoid considering novel constitutional issues simply because a good faith defense may make the question moot. *See United States v. Leon,* 468 U.S. 897, 924–25, 104 S.Ct. 3405, 3421–22, 82 L.Ed.2d 677 (1984). For this reason, the Court believes it has an obligation to begin by considering the constitutional questions raised by the plaintiff's complaint.

authority but occurred as a result of plaintiff's decision to disregard it. 801 F.2d at 203.[3]

■ The plaintiff next contends that he may state a claim under the Fourth or Fourteenth Amendments by showing that the chase constituted "excessive force." Citizens are protected under the Constitution from the use of excessive force, *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973), although it is not clear which amendment gives rise to this right. *See Herrera v. Valentine*, 653 F.2d 1220 (8th Cir.1981) (right to be protected from excessive force arises from Due Process Clause). If the substantive due process component of the Fourteenth Amendment is the proper source of this right, the Court need not ask whether a seizure took place. However, it must decide whether the defendants' actions constituted "force" at all. The defendants contend that the term "force" presumes that weapons or obstacles were used to overcome another's resistance; in this case the defendants merely contend that they kept up with the plaintiff at a speed which the plaintiff found necessary in order to stay ahead of them. The plaintiff responds that the reasonable foreseeability of serious injury resulting from the chase makes the chase as much of an act of force as an attempt to run the plaintiff over with a police car. He further contends that the defendants did not simply follow him but "actively used roadblocks and public traffic" to try to stop him.

The Court believes the proper focus should be upon the nature of the defendants' acts, rather than the risk created or the foreseeability of the harm. The pursuit, by itself, did not limit the plaintiff's ability to protect himself from harm in the same way in which a shot or attempt to run him down would limit that ability. At all times the plaintiff retained the ability to lower or eliminate the risk of injury by slowing down or stopping. Instead, he appears to have preferred the risk of injury over the risk of apprehension and suffered the consequences of that choice. Because the Court cannot find that the plaintiff was forced to make that choice, it cannot find that the defendants used excessive force or any force.

■ The plaintiff cannot rely upon the Eighth Amendment of the Constitution to challenge the pursuit. His Eighth Amendment claim is technically improper because the amendment only directly protects convicted prisoners. *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). However, the Supreme Court has held that the Fourteenth Amendment rights of pretrial detainees are "at least as strong" as the Eighth Amendment rights of convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). Yet even if the plaintiff can invoke the rights of pretrial detainees when challenging the circumstances which preceded any detention, any cruel and unusual punishment claim involving the pursuit must fail because the pursuit itself could not constitute an "infliction of pain," *Ingraham*, 430 U.S. at 670, 97 S.Ct. at 1412. Because the pursuit was not expressly intended to punish the plaintiff, but was rationally related to the legitimate state objective of preventing escape, it does not constitute a form of pretrial punishment forbidden in *Bell v. Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874. For these reasons, the Court must find that the constitutionality of the pursuit does not turn on any genuine issues of material fact. Even if the Court accepts every fact which the plaintiff has supported through affidavits or depositions, the Court must find that the pursuit was constitutional. Thus, the Court must grant summary judgment with

---

**3.** A different issue would be present if the defendants had attempted to chase the plaintiff into a "dead man's roadblock" and the accident had occurred at the roadblock. When police officers corner a suspect, they most certainly take away his freedom to walk away. *Jamieson v. Shaw*, 772 F.2d 1205, 1211 (5th Cir.1985). In this case, however, the plaintiff evaded the roadblocks set up, and they played no role in the tragic result. While the plaintiff contends that the officers intended to use public traffic to achieve the same result, the plaintiff has failed to provide any affidavits or other evidence to support this contention. Nothing in the documents submitted by the plaintiff in resistance to the motion for summary judgment suggests that the route of the chase was controlled by anyone other than the plaintiff. Thus, under *Celotex*, the plaintiff has not show that a genuine issue of material fact exists on that question.

regard to Counts I, II and IV of the plaintiff's complaint.

### The Aftermath

In Count III of his complaint, the plaintiff contends that the defendants intentionally denied and delayed giving him necessary medical treatment in deliberate indifference to his serious medical needs. The defendants' response is two-fold. They first contend that the allegation is simply false; relying upon Defendant Enockson's deposition testimony, they contend that an ambulance was immediately called to the scene, and that in the meantime, officers made a deliberate choice not to move him because they feared it would aggravate a spinal injury. Although they cannot show how long it took the ambulance to arrive, they contend that "immediate and appropriate" care was provided. In the alternative, they contend that any failure to treat him did not aggravate his injuries in any degree, so that an essential element of a deliberate indifference claim—a resulting injury—is not present.

The plaintiff named all defendants in this count, including Defendant Pottebaum, who by all accounts was seriously injured and was in no condition to give aid to anyone. The plaintiff has failed to provide any basis in response to the motion for summary judgment which indicates that the delay resulted from any "official custom or policy" other than the policy that persons with back injuries should not be moved. That can hardly be considered a policy of deliberate indifference to serious medical needs. For this reason, the defendants' motion for summary judgment must be granted with regard to the City of Sioux City. Similarly, nothing suggests that the delay resulted from any affirmative conduct of the supervisory defendants, Castner and Donovan, who were not at the scene. The motion for summary judgment must therefore be granted with regard to Defendants Pottebaum, Castner and Donovan.

However, the Court believes that a jury question exists on the issue of whether Defendant Enockson and the other officers at the scene were deliberately indifferent to serious medical needs. The utterance of the onlooker, who admonished officers for paying more attention to Pottebaum than to the plaintiff, as well as the frequently mentioned belief that the plaintiff was dead, constitute circumstantial evidence that the officers failed to properly attend to the plaintiff. Furthermore, a reasonable jury could infer that the plaintiff suffered pain as a result of such inattention. It is true that the plaintiff had a duty to "fire back" in response to the motion for summary judgment with supporting depositions, affidavits and other evidence, but did not fire back with direct evidence on these points. However, the plaintiff need not have produced direct evidence to support each essential fact if a reasonable jury could infer from circumstantial evidence presented that the facts alleged were present. While the inferences concerning deliberate indifference appear weak, they are sufficient to create a jury question. For this reason, the motion for summary judgment is denied with regard to claims against Defendants Enockson and Doe in Count III.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment is granted with regard to Counts I (relating to unreasonable search and seizure), II (relating to denial of liberty without due process) and IV (relating to cruel and inhuman treatment).

IT IS FURTHER ORDERED that the defendants' motion for summary judgment is granted with regard to Count III (deliberate indifference to medical needs) insofar as the claims alleged therein are against Defendants Pottebaum, Castner, Donovan and the City of Sioux City.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment is denied with regard to Count III insofar as the claims alleged therein are against Defendants Enockson and Doe.