694 F.Supp. 1384 (1988)
Walter E. KELLER and Audrey A. Keller, Plaintiffs,
v.
Officer Kenneth Rowland TRUSKA, Individually and as police officer of the Police Department of the City of Fredericktown, et al., Defendants.
No. S86-0152C.
United States District Court, E.D. Missouri, Southeastern Division.
August 26, 1988.
*1385 Albert C. Lowes, Lowes and Drusch, Cape Girardeau, Mo., for plaintiffs.
Donald L. Dickerson, Thomasson, Dickerson, Gilbert and Cook, Cape Girardeau, Mo., for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
Keller v. Truska, et al., No. S 86-0152 C, and Roach v. City of Fredericktown, et al., No. S 87-0009 C, arose out of an automobile accident that occurred near Fredericktown, Missouri. These actions, brought pursuant to 42 U.S.C. § 1983, were previously set for trial in May 1988. Shortly before trial, defendants challenged the Court's jurisdiction, contending that the allegations of plaintiff's complaint, even if true, did not give rise to an action under § 1983. Both cases were reset for trial at a later date, and counsel were asked to brief the Court's jurisdiction under 42 U.S. C. § 1983.

Facts.
On the evening of July 4, 1986, Randy Roach was a passenger in a car being driven by James Adams through the City of Fredericktown, Missouri. The car Adams was driving came under the suspicion of Kenneth Truska, a police officer for the City of Fredericktown. Truska attempted to stop the Adams vehicle by activating his flashing lights. At that point, Adams began driving at speeds up to 90 miles per hour, and Truska pursued him at similar speeds.
The pursuit continued outside the city limits of Fredericktown to Mill Creek, where Adams lost control of his car and collided with a car being driven by Walter Keller. Keller's wife Audrey was a passenger in her husband's car. The car Truska was driving also hit the Keller vehicle. Adams died in the accident, and the Kellers and Roach were seriously injured.
The Kellers filed a four-count complaint against Truska, City Marshal Jerry Umfleet and the City of Fredericktown. Counts I and II, brought under 42 U.S.C. § 1983, allege excessive force, inadequate training and negligence. Counts III and IV are pendant state claims for negligence.
Roach named as defendants Truska and the City of Fredericktown. Counts I and II of the four-count complaint are against Truska for unreasonable search and seizure (Count I) and negligence (Count II). Counts III and IV against the City of Fredericktown allege policies of inadequate training (Count III) and vicarious liability (Count IV).

Legal Theories.
The briefs filed by the parties address three theories of liability: unreasonable seizure, negligence and inadequate training. A fourth theory, excessive force, is alleged in the Kellers' complaint, but was not included in their jurisdictional brief. The Court will address that theory first.

A. Excessive Force.

Plaintiffs Walter and Audrey Keller allege in their complaint that "[b]ut for Defendant Truska's excessive force and speed in pursuing an alleged misdemeanant, the Plaintiff[s] ... would never have been involved in any accident." The Eighth Circuit Court of Appeals has held that the right to be free from the use of excessive force by police officers emanates from the due process clause. Herrera v. Valentine, 653 F.2d 1220, 1229 (8th Cir. 1981). The Court must look to the facts of a given situation to determine whether there has been a constitutional violation. "Not every assault or bodily harm caused by a police officer means that a constitutional claim may be asserted. In order to violate the due process clause, the conduct must be so egregious and reckless that it may be deemed a substantive denial of due process." Dale v. Janklow, 828 F.2d 481, 485 (8th Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988).
Here, despite plaintiffs' contention to the contrary, there was no excessive force being *1386 applied during the chase. There were no weapons used to subdue Adams. Rather, Truska was engaged in a high speed pursuit of someone he believed had committed a traffic violation. It might be argued that the force occurred when Truska's car ran into the Kellers' car after it had already collided with Adams. A three-car accident, however, does not amount to violation of someone's constitutional rights. There are no allegations that injury resulted because of the collision with Truska's car. The conduct of Truska in pursuing Adams was not of the "egregious or reckless" type that would amount to a constitutional violation for excessive force. See Tagstrom v. Pottebaum, 668 F.Supp. 1269, 1273 (N.D. Iowa 1987), appeal denied, Tagstrom v. Enockson, 845 F.2d 1027 (8th Cir.1988).

B. Unreasonable Seizure.

Plaintiffs next contend that the pursuit of Adams by Truska was an unreasonable seizure in violation of the fourth amendment. This theory has infrequently been considered, and the courts that have examined unreasonable seizure in the context of a high speed pursuit have reached different results. The sixth and ninth circuits have ruled that a high speed pursuit does not state a claim for unreasonable seizure under the fourth amendment. The fifth circuit has recognized a cause of action under § 1983.
The issue was first addressed by the sixth circuit in Galas v. McKee, 801 F.2d 200 (6th Cir.1986). In that case, a police officer was engaged in the high speed pursuit of a car that began speeding after the officer had attempted to stop the car by activating his lights and siren. The driver of the car, plaintiffs' thirteen year old son, was seriously injured when he lost control of his automobile and ran off the road.
Relying on Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), plaintiffs in Galas argued that the continuance of a high speed pursuit of a traffic offender until the pursuit is terminated by a crash of the offender's vehicle constitutes an unreasonable seizure in violation of the fourth amendment. In Garner, the Supreme Court held that the use of deadly force to apprehend an unarmed, fleeing felon was an unreasonable seizure that violated the fourth amendment.
The Galas court noted that a two-part test should be used to determine whether the fourth amendment had been violated. First, the court must determine whether there was a seizure. Second, if there was a seizure, the court must then decide whether it was an unreasonable method of seizing traffic offenders. Galas, 801 F.2d at 202. A seizure occurs when there is a restraint of liberty "accomplished by means of physical force or show of authority." Id. at 203. The court ruled that no seizure had taken place, although there was a restraint of liberty. "This restraint on plaintiff's freedom to leave, however, was not accomplished by the show of authority but occurred as a result of plaintiff's decision to disregard it." Id.
The court addressed the second prong of the test even though it had already determined that no seizure had taken place. Although the court recognized that "high-speed pursuits place the suspect, the officer and the public in general at risk of death or serious bodily injury" it ruled that the methods used to apprehend fleeing traffic offenders were not unreasonable.
[W]e conclude that the minimal intrusion on a traffic offender's Fourth Amendment right occasioned by the officer's participation in a high-speed pursuit does not outweigh a longstanding police practice which we consider "essential to a coherent scheme of police powers."
Galas, 801 F.2d at 204.
The Ninth Circuit Court of Appeals relied on Galas in ruling that the fourth amendment had not been violated in Brower v. Inyo County, 817 F.2d 540 (9th Cir.1987), cert. granted, ___ U.S. ___, 108 S.Ct. 2869, 101 L.Ed.2d 904 (1988). There, the driver of the vehicle being pursued by a county sheriff's deputy died when his automobile collided with a tractor-trailer truck that was being used as a roadblock. As the court noted in Galas, the driver made a conscious decision to avoid official restraint. *1387 Therefore, no seizure took place. Id. at 546-47.
Galas and Brower both involve claims on behalf of the driver of the car being pursued by the police officer. In Jones v. Sherrill, 827 F.2d 1102 (6th Cir.1987), the court considered whether the same rule applies to an innocent driver of a third vehicle whose car is struck by the fleeing suspect. That is the same position the Kellers are in here.
The court relied on its decision a year earlier in Galas in holding that plaintiff did not have a fourth amendment claim. The court ruled that the pursuit did not constitute a seizure of plaintiff any more than it could of the fleeing suspect. "The restraint on [the innocent bystander's] liberty was caused by the accident with [the fleeing suspect] and not by any physical force or show of authority on the part of the officers. There was no fourth amendment violation." Jones, 827 F.2d at 1104-05.
The fifth circuit's ruling in Jamieson v. Shaw, 772 F.2d 1205 (5th Cir.), reh'g denied, 776 F.2d 1048 (5th Cir.1985), favors plaintiffs' position. In that case, the plaintiff appealed the dismissal of her § 1983 action by the district court. Plaintiff was a passenger who was injured when the car in which she was riding struck a roadblock that was set up by police to stop the fleeing vehicle. After dismissal of her complaint which alleged negligence and excessive force, plaintiff sought leave to amend her complaint to assert that her fourth amendment rights had been violated. The district court denied this request on the basis that the amendment would not state a claim under the fourth amendment.
The appellate court reviewed the sufficiency of plaintiff's proposed amended complaint to determine whether the district court had properly denied plaintiff's request. The court found that plaintiff's amended complaint stated a cause of action: "she was `seized' when the officers deliberately placed the roadblock in front of the car in which they knew she was a passenger." Jamieson, 772 F.2d at 1210.
Although the fifth circuit's holding in Jamieson favors plaintiffs, that case is easily distinguished. There, the court held that a seizure occurred not because of the chase, but because of the roadblock that was placed in front of the car. This critical distinction persuades the Court to follow the decisions of the sixth and ninth circuits in Galas, Jones and Brower. It is difficult to reach the conclusion that there could be a fourth amendment seizure when the only action by the police officer is pursuing a driver who attempts to flee from the officer.
Although the court is sympathetic with plaintiffs, they have not been the victims of a fourth amendment violation. Roach, the passenger in the fleeing vehicle was restrained, if at all, by Adams rather than by Truska. Similarly, the Kellers were innocent victims of Adams' negligent driving, not Truska's pursuit. The Court will therefore dismiss the portions of plaintiffs' complaint relating to the unreasonable seizure claims.

C. Negligence.

The next issue concerns the allegations of negligence against Officer Truska. The Supreme Court held in Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), that mere negligence on the part of state officials cannot state a claim for a due process violation under § 1983, stating that due process "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." Id. at 328, 106 S.Ct. at 663 (emphasis in original). The Court, however, specifically declined to consider "whether something less than intentional conduct, such as recklessness or `gross negligence,' is enough to trigger the protections of the Due Process Clause." Id. at 334 n. 3, 106 S.Ct. at 667 n. 3. See also Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).
Plaintiff Roach does not make any allegations of gross negligence in his complaint. The only thing in the Kellers' complaint that could be construed as such are the allegations that "Truska's action in maintaining a high speed pursuit beyond *1388 city limits for no emergency ... was conduct that shocks the conscience."
In Myers v. Morris, 810 F.2d 1437 (8th Cir.), cert. denied, ___ U.S. ___, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), the court interpreted Daniels and Davidson as holding that "negligent or `grossly negligent' conduct does not state a claim under 42 U.S.C. § 1983." Id. at 1468. This interpretation seems to be in direct conflict with the Supreme Court's comment in footnote 3 of Daniels. Nevertheless, other cases that have addressed gross negligence in the context of an automobile accident have held that it is not actionable under § 1983.
In Cannon v. Taylor, 782 F.2d 947 (11th Cir.1986), a woman was killed when a police vehicle struck her automobile. The court ruled, prior to Daniels, that plaintiff could not maintain an action under § 1983.
[W]e hold that a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for violation of a federal right. The type of negligence alleged in this case may well be actionable under state law. Automobile negligence actions are grist for the state law mill. But, they do not rise to the level of a constitutional deprivation.
Cannon, 782 F.2d at 950.
Similarly, the sixth circuit held in Jones v. Sherrill, 827 F.2d 1102 (6th Cir.1987), that the actions of the officers in engaging in a high speed pursuit did not amount to gross negligence. "Negligence does not become `gross' just by saying so. If the courts are to make any sense of the distinction between gross negligence and simple negligence, we must ensure that gross negligence is something more than simple negligence `with the addition of a vituperative epithet.'" Id. at 1106 (quoting Wilson v. Brett, 11 M & W. 113, 152 Eng.Rep. 737 (Ex. 1843)).
The Court therefore finds that the allegations of negligence here do not rise to a level of conduct that would be actionable under § 1983. It is possible, however, that a negligence claim could be heard under the Court's pendant jurisdiction if there are other closely related federal claims. The Court will make that determination after ruling on the remaining basis for federal jurisdiction.

D. Inadequate Training.

Plaintiffs allege that the City of Fredericktown had policies or practices, including inadequate training of the police force, that resulted in deprivations of plaintiffs' constitutional rights. Under 42 U.S. C. § 1983, there is no respondeat superior liability of a municipality for the acts of its employees. In Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held, however, that deprivations which resulted from a municipality's policy or custom could lead to municipal liability. Id. at 694, 98 S.Ct. at 2037.
Under Monell, the following criteria must be established for a municipality to be subjected to liability: (1) a policy (2) of the city's policymaker (3) that caused (4) the plaintiff to be subjected to a deprivation of constitutional right. Grandstaff v. City of Borger, 767 F.2d 161, 169 (5th Cir.1985), reh'g denied, 779 F.2d 1129 (5th Cir.1986), cert. denied, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). As the Court has already ruled that plaintiffs' constitutional rights were not violated, there can be no resulting municipal liability. Therefore, plaintiffs' claims against the City of Fredericktown must also fail.

Conclusion.
Plaintiffs have presented four legal theories in support of their contention that the Court should hear this action under 42 U.S. C. § 1983. As the Court has discussed above, no one of these theories is sufficient to support plaintiffs' claim that a constitutional deprivation has occurred. Therefore, the Court must dismiss these actions.