Robert Jeff ADAMS Sr., Personal Representative for the Estate of Donald Demasco Adams, Sr., Plaintiff,

v.

J.M. LINDSEY and Robert Soesbe, Defendants.

No. 86–8352–CIV.

United States District Court, S.D. Florida.

Feb. 14, 1991.

Evan Fetterman, North Palm Beach, Fla., for plaintiff.

Julius F. Parker, Tallahassee, Fla., for defendants.

## ORDER DENYING SUMMARY JUDGMENT

NESBITT, District Judge.

This cause comes before the Court upon Defendants' Motion for Summary Judgement on the basis of the qualified immunity defense of good faith, filed March 20,

1990.[1] After due consideration, it is hereby ORDERED and ADJUDGED that Defendants' motion is DENIED.

## FACTS and PROCEDURAL HISTORY

Plaintiff's Amended Complaint alleges the following facts:

During the early morning hours of May 8, 1985, Defendant Donnie Ingram, a deputy sheriff of the St. Lucie County Sheriff's Department, stopped an automobile being driven by Robert Adams, Jr. ("Robert") to investigate reports of a petty theft. Plaintiff's decedent, Donald Demasco Adams, Sr. ("Donald"), was a passenger in the back seat of the car. After Robert told Ingram that he did not have a valid license, Ingram learned that there was a warrant outstanding for the arrest of Robert for failure to appear in court on the misdemeanor offense of petty theft, but that there were no outstanding warrants for Donald.

Ingram, who on previous occasions had stopped and then released Robert, indicated to Robert that he would have to go to jail. After Robert stated that Ingram knew his identity and address, he returned to his car and drove away, and a high-speed chase through a residential neighborhood ensued.

Defendant Deputy Sheriff Robert Soesbe joined in the chase, which covered approximately ten miles. During the chase, Soesbe asked Defendant J.M. Lindsey, a supervisor with the Sheriff's department, whether he should try to "take out" the vehicle. Lindsey told Soesbe that he should attempt to shoot a bullet through the radiator of the vehicle. Instead, Soesbe intentionally rammed the vehicle

several times. The last contact caused the driver to lose control and crash. Donald died from injuries sustained in the crash.

Plaintiff, the personal representative for the Estate of Donald, brought this action against five defendants: Ingram, Soesbe, Lindsey, Sheriff Robert Knowles, and St. Lucie County, Florida. The amended complaint alleges that the conduct of the defendant deputies was "intentional, malicious, willful, wanton, and [in] reckless disregard of Plaintiff decedent's rights or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society," and it may fairly be construed as asserting a violation of, *inter alia*, Robert's fourth amendment right to be free from unreasonable seizures.

The two remaining defendants, Lindsey and Soesbe,[2] deny that any bumping by Soesbe's car caused the accident. They assert that the accident resulted because Robert lost control of his car during the chase, and that the decision to engage in the high-speed chase does not give rise to liability under § 1983.

## DISCUSSION

Defendants have moved for summary judgment on the ground of qualified immunity.[3] Specifically, they claim that, even assuming that all of Plaintiff's allegations are true, they cannot be liable for violating Donald's fourth amendment rights because it was not clearly established at the time of the incident that causing a suspect's car to crash by intentionally ramming it during a

---

1. The Court stayed consideration of this motion pending the *en banc* decision of the Eleventh Circuit Court of Appeals in *Horlock v. Georgia Department of Human Resources. See Horlock v. Georgia Department of Human Resources,* 890 F.2d 388, 395–96 (11th Cir.1990) (vacating prior panel opinion and ordering rehearing *en banc*). Subsequent to the Court's Order staying consideration of this motion, *Horlock* was settled and the appeal dismissed. *See Bennett v. Parker,* 898 F.2d 1530, 1534 n. 1 (11th Cir.1990).

2. The claims against St. Lucie County were dismissed prior to trial, and the Court entered summary judgment in favor of Sheriff Knowles (Knowles was sued only in his official capacity). The Court also granted summary judgment in

favor of Soesbe, Ingram, and Lindsey as to claims brought against them in their official capacity. The case proceeded to trial on the claims brought against the three deputy sheriffs in their individual capacity. At the close of the evidence, the Court directed a verdict in favor of Ingram. Finding that no constitutional violation occurred, the jury returned verdicts in favor of Lindsey and Soesbe. For reasons irrelevant to the resolution of this motion, the Court granted a new trial. Thus, only Lindsey and Soesbe remain as defendants.

3. Plaintiff's challenge to the timeliness of the motion for summary judgment is without merit. A motion for summary judgment may be filed at any time. *See* Fed.R.Civ.P. 56(b).

high-speed chase constituted a "seizure" triggering the protections of the fourth amendment. For the reasons set forth below, the Court rejects the Defendants' argument and finds that Defendants are not entitled to qualified immunity.[4]

### A. Qualified Immunity In Excessive Force Cases:

■ The defense of qualified immunity, enunciated by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), provides that government officials performing discretionary functions (including police officers) are shielded from liability if (1) "the law with respect to [their] actions was unclear at the time the cause of action arose," *McDaniel v. Woodard*, 886 F.2d 311, 313 (11th Cir. 1989) (quoting *Clark v. Evans*, 840 F.2d 876, 879 (11th Cir.1988)), or if (2) "a reasonable officer could have believed [the officer's actions] to be lawful, in light of clearly established law and the information the ... officer possessed." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *McDaniel v. Woodard*, 886 F.2d at 313; *see also Greason v. Kemp*, 891 F.2d 829, 834 (11th Cir. 1990) (separate inquiry for two prongs of qualified immunity defense).

The Supreme Court has held that qualified immunity is available as a defense to claims that police officers have conducted an unreasonable search in violation of the fourth amendment. *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Court has, however, expressly declined to address whether qualified immunity is available as a defense to claims that an officer has used excessive force in violation of the fourth amendment's prohibition against unreasonable seizures, *see Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1873 n. 12, 104 L.Ed.2d 443 (1989) and neither party has raised this issue.

The United States Court of Appeals for the Eleventh Circuit had held, prior to the decision in *Graham*, that qualified immunity is available in excessive force situations. *See Hamm v. Powell*, 874 F.2d 766, 771 (11th Cir.1989), *modified on rehearing*, 893 F.2d 293 (11th Cir.), *cert. denied*, *Hamm v. Norred*, —— U.S. ——, 110 S.Ct. 3218, 110 L.Ed.2d 665 (1990). On rehearing subsequent to *Graham*, the Court in *Hamm* reaffirmed the availability of qualified immunity in excessive force cases. *See Hamm v. Powell*, 893 F.2d 293 (11th Cir.1990); *see also Brown v. Glossip*, 878 F.2d 871, 873–74 (5th Cir.1989) ("we ... hold that qualified immunity is available as

**4.** Defendants do not allege that they are entitled to summary judgment because Plaintiff has failed to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed the alleged acts. Instead, they ask the Court to find that they are entitled to summary judgment because, even assuming Plaintiff's allegations to be true, they do not state a violation of clearly established law.

The Court may resolve Defendants' motion notwithstanding the existence of factual disputes relevant to the determination of whether a reasonable official could have believed Defendants' actions to be lawful in light of the information then known to Defendants. Factual disputes do not preclude the Court from granting summary judgment if the plaintiff's complaint does not allege a violation of clearly established law because, if the complaint does not meet this threshold requirement, any factual disputes existing at the summary judgment stage are not "material." *See Bennett v. Parker*, 898 F.2d 1530, 1536 n. 2 (11th Cir.1990) (Tjoflat, C.J., concurring) ("The court considers in the light most favorable to the plaintiff all facts fairly

inferable from the record—regardless of factual disputes—and decides whether, under those facts, defendant's conduct violated law clearly established at the time"); *McDaniel v. Woodard*, 886 F.2d 311, 313 (11th Cir.1989) ("That factual disputes remain does not preclude summary judgment based on qualified immunity.").

If a court finds, as the Court does here, that summary judgment is inappropriate because the law was at the time clearly established and because, accepting Plaintiff's allegations as true, the illegality of the conduct would have been apparent to a reasonable official in Defendant's shoes, then remaining factual disputes relating to the officer's conduct and the information he possessed should be resolved by a jury at trial. *See Melear v. Spears*, 862 F.2d 1177, 1184 & 1184 n. 7 (5th Cir.1989); *Brisk v. City of Miami Beach*, 726 F.Supp. 1305, 1311–15 (S.D.Fla.1989) (second prong of qualified immunity inquiry should go to jury if complaint and facts inferable from record are sufficient to defeat summary judgment motion and if material facts relating to defendant's conduct or knowledge remain in genuine dispute).

a defense to monetary liability for an objectively unreasonable use of force under the Fourth Amendment"); *Brisk v. City of Miami Beach*, 726 F.Supp. 1305, 1314 n. 26 (S.D.Fla.1989).

A recent Eleventh Circuit case casts doubt on this view. In *Ortega v. Schramm*, 922 F.2d 684 (11th Cir.1991), a plaintiff brought, *inter alia*, a § 1983 excessive force claim against a deputy sheriff of Glades County, Florida. The district court granted a judgment notwithstanding the verdict on the basis of qualified immunity. "In support of its decision, the district court concluded that there had been no showing of excessive force when analyzed under the fourth amendment 'reasonableness' standard." *Id.*

The Eleventh Circuit reversed, holding that "a reasonable jury could have found that [the deputy's conduct] constituted excessive force in violation of plaintiffs' fourth amendment right[s]," and it remanded the case for trial on *damages only. Id.* The Court of Appeals therefore apparently decided that the deputy was liable merely because the jury could have concluded that he used excessive force. It did *not* engage in a separate analysis of whether the deputy was entitled to qualified immunity notwithstanding his use of undue force. By implication, then, the Court held that qualified immunity is unavailable in excessive force situations.

The Court need not decide whether *Ortega* implicitly contradicts *Hamm v. Powell* because, even assuming *arguendo* that qualified immunity is available in excessive force situations, the Court concludes that, assuming as true all facts alleged by Plaintiff, it was clearly established in May, 1985 that terminating the freedom of movement of a passenger in a car driven by a non-dangerous misdemeanant, by intentionally ramming into the car at high speed and causing it to crash, constituted an unreasonable seizure, and, in light of this clearly established fourth amendment right, it would have been apparent to a reasonable officer in Defendants' position that Defendants' conduct was unlawful.

## B. *A Clearly Established Seizure:*

■ In *Anderson, supra*, the Court explained that the relevant legal rule under which the qualified immunity issue is judged must be fact specific. *See id.* 107 S.Ct. at 3039 ("the right the official is alleged to have violated must have been 'clearly established' in a ... particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Howell v. Evans*, 922 F.2d 712 (11th Cir. 1991) (quoting *Anderson*). Though a district court should be fact specific when formulating the issue of law and deciding the question of whether a given legal proposition was "clearly established," *see McDaniel v. Woodard*, 886 F.2d 311, 314 (11th Cir.1989), the exact fact pattern need not have been declared illegal by a federal court. *See Anderson*, 107 S.Ct. at 3039 ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful"); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985); *Nicholson v. Ga. Dept. of Human Resources*, 918 F.2d 145, 147 (11th Cir.1990); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990). Although the standard is fact-specific, "it is not one of factual rigidity." *Stewart v. Baldwin County Bd. of Ed.*, 908 F.2d 1499, 1504 (11th Cir.1990); *see also Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087, 1092 (3rd Cir.1989) ("Some but not precise factual correspondence to precedent is necessary in order for defendant to be charged with knowledge with regard to the lawfulness of his actions") (quoting *People of Three Mile Island v. Nuclear Regulatory Commissioners*, 747 F.2d 139, 144 (3rd Cir.1984)). Stated another way, though officials need not predict the future course of constitutional law, they *"are required to relate established law to analogous factual settings."* *Stewart*, 908 F.2d at 1504 (quoting *People of Three Mile Island v. Nuclear Regulatory Commissioners*, 747 F.2d 139, 144 (3rd Cir.1984)) (emphasis added).

To decide whether, at the time of this incident, innocent persons in a fleeing car whose driver was suspected of a misdemeanor had a clearly established right not to be subjected to ramming from a police car at high speed, the Court must look to the law established by the Supreme Court, the courts of appeals, and the district courts. *Greason v. Kemp,* 891 F.2d 829, 833 (11th Cir.1990).[5]

The Court's survey of the law in this area must begin with *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), a case decided approximately six weeks *prior* to the incident alleged here. In *Garner,* a police officer shot a fleeing and unarmed suspected felon in order to prevent his escape. The Court first reaffirmed the general principle that "[whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Id.* 105 S.Ct. at 1699; *see also United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 1877 n. 6, 64 L.Ed.2d 497 ("a person is 'seized' within the meaning of the Fourth Amendment only if ... a reasonable person would not have believed he was free to leave"); *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). Then, after stating that *"there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment,"id.* 105 S.Ct. at 1699 (emphasis added), the Supreme Court held that "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable.... A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.* 105 S.Ct. at 1701.

The principle that the use of deadly or excessive force to apprehend a fleeing suspect constitutes a fourth amendment seizure was supported by all nine Justices of the Supreme Court, *see id.* 105 S.Ct. at 1708–09 (1985) (O'Conner, J. dissenting), and had been clearly established long before *Garner. See Fernandez v. Leonard,* 784 F.2d 1209, 1217 (1st Cir.1986) (principle that shooting constitutes seizure clearly established in 1976).

In this case, of course, the deadly force allegedly used by Defendants was not a gun but a police car. Relying on this distinction, Defendants argue that they are entitled to immunity because no federal case has declared precisely this conduct to be a seizure. This argument misses the point. If the legal right is clearly defined such that it would be apparent to a reasonable official that the defendant's particular conduct is unlawful, then each and every scenario in which the right could be violated need not be spelled out by a court. *See Stewart v. Baldwin County Bd. of Ed.,* 908 F.2d 1499, 1504 (11th Cir.1990); *People of Three Mile Island v. Nuclear Regulatory Commissioners,* 747 F.2d 139, 144 (3rd Cir.1984); *see also Anderson,* 107 S.Ct. at 3039; *Mitchell,* 105 S.Ct. at 2820 n. 12.

For example, if Defendants had stopped a suspect fleeing on foot by using a bow and arrow, or a knife, they would be charged with knowledge of *Garner* and earlier cases defining "seizure," and they most certainly could not argue that it was not clearly established that the use of these weapons to stop a fleeing suspect constitutes a seizure. The result should be no different simply because Defendant Soesbe allegedly used a patrol car as his deadly weapon. *See Mathis v. Parks,* 741 F.Supp. 567, 573 (E.D.N.C.1990) ("*Garner* makes

**5.** The state court tort cases cited by Defendants and dealing with injuries to third persons not in the car being chased are both factually and legally inapposite. The legal issue here is whether Plaintiff's decedent had a clearly established right under the United States Constitution not to be subjected to an unreasonable seizure, not whether state courts had concluded that high-speed car chases are reasonable under state tort law, or, in the case of *City of Miami v.*

*Harris,* 490 So.2d 69 (Fla. 3rd DCA 1985), *cert. denied, Harris v. City of Miami,* 479 U.S. 1031, 107 S.Ct. 876, 93 L.Ed.2d 830 (1989), whether the conduct violated due process. Moreover, even if the same legal question were at issue, the state cases are factually inapposite because they involve actions brought by third parties who were not occupants of the car being chased and were struck accidentally by the suspect's car.

**800**

clear that there are limits to the use of deadly force against arrestees, regardless of the nature of the instrumentality used in applying the force").

Similarly, if Plaintiff had alleged that Defendant Soesbe caused the crash by shooting the driver during the high-speed chase, a reasonable official in May, 1985 would have known that he had "seized" the car's occupants. *See Garner, supra; Taylor v. Mayone,* 599 F.Supp. 148, 152 & 155 (S.D.N.Y.1984) (assuming that shooting at moving car constitutes seizure), *aff'd,* 779 F.2d 39 (2nd Cir.1985); *United States v. Matthews,* 417 F.Supp. 813, 817 (E.D.Pa.) (shooting out tires of suspect car during highspeed chase constitutes seizure), *aff'd,* 547 F.2d 1165 (3rd Cir.1976). This well-established *Garner*-type seizure does not become unsettled merely because the suspect is shot while fleeing in a car rather than on foot.

■ This case is legally indistinguishable. The concept of a seizure is clearly defined and sufficiently well-developed such that it would be apparent to a reasonable official that a car moving at high speed can be the physical force used to apprehend a suspect just as can a gun, *see Taylor v. Mayone,* 599 F.Supp. at 152 & 155; *United States v. Matthews,* 417 F.Supp. at 817, a nightstick, *Mathis v. Parks,* 741 F.Supp. at 572, a knee to the abdomen, *id.,* or a police dog. *Robinette v. Barnes,* 854 F.2d 909, 912 (6th Cir.1988) (use of police dog constitutes seizure but not deadly force). The absence of pre-May, 1985 cases involving the use of police cars as the physical object effectuating the seizure is attributable to nothing more than the fact that guns and not cars are an officer's weapon of choice, and it by no means demonstrates either that the law applicable to Defendants' actions was not clearly established or that it would not have been apparent to a reasonable official in Soesbe's position that, by his actions, he was effectuating a fourth amendment seizure of Plaintiff's decedent. To accept Defendants' argument and require Plaintiff to produce an on-point case which holds the obvious would be to "add an unwarranted

degree of rigidity to the law of qualified immunity." *Greason v. Kemp,* 891 F.2d 829, 834 n. 10 (11th Cir.1990).

Notwithstanding that the legal definition of a seizure was clearly defined and that a reasonable official would have been able to apply this law to the facts as alleged by Plaintiff, Defendants insist that the law in this area was unsettled because, beginning in 1986, courts were in disagreement as to whether a seizure occurred when officers engaged in a particular and specific type of conduct distinctly different from the conduct alleged here. In support of this argument Defendants rely on *Brower v. Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), and on several earlier cases, none of which involves the intentional use of a speeding patrol car to ram a plaintiff off the road.

In *Brower,* the plaintiff, the driver of a stolen car, was killed during a high-speed chase when he crashed into a concealed police roadblock. The court of appeals had held in 1987 that no seizure occurred because the cause of the termination of the plaintiff's freedom of movement was his own failure to stop and not any physical force applied by the officers. The Supreme Court reversed, holding that the alleged facts constituted a seizure because plaintiff was stopped through means intentionally applied by the government. *See id.* 109 S.Ct. at 1381 ("a Fourth Amendment seizure does not occur whenever there is a governmentally caused [and governmentally desired] termination of an individual's freedom of movement ... but only when there is a governmental termination of movement *through means intentionally applied* ") (emphasis in original).

To illustrate this principle, the Court recited a different and more obvious example of a seizure nearly identical to the incident alleged by Plaintiff: "If ... the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, *then the termination of the suspect's freedom of movement would have been a seizure." Id.* (emphasis added). The use of this example demonstrates that the only unsettled law resolved by the Supreme

Court was that, unlike when a driver simply loses control of his car, the use of a roadblock can constitute a seizure because it can result in a governmentally caused termination of movement through means intentionally applied. The Court did not resolve any unsettled law in stating that the use of a car to sideswipe a suspect's car is a seizure. To the contrary, the Court relied on this hypothetical as an obvious example of a seizure in order to explain more thoroughly the basis for its holding.[6]

Nevertheless, Defendants insist that no case prior to *Brower* had held that the use of a police car in a high-speed chase to ram a vehicle and cause a suspect to crash constitutes a seizure, and they cite several cases decided *after 1985* for the proposition that in 1985, it was settled that such conduct was not a seizure. Defendants' argument is unpersuasive.[7]

The cited cases are of marginal relevancy because they are factually inapposite. In each case, the plaintiff either lost control of or was a passenger in a vehicle that crashed *without* being hit by a patrol car, was a third party who was *accidentally* hit, or, less often, had hit a roadblock. *See, e.g., Jones v. Sherrill*, 827 F.2d 1102 (6th Cir.1987) (third-party accidentally hit by chased car);[8] *Brower v. County of Inyo*, 817 F.2d 540 (9th Cir.1987) (driver hit roadblock), *rev'd*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); *Chesney v. Hill*, 813 F.2d 754 (6th Cir.1987) (driver lost control without being hit; collided with car driven by third party); *Galas v. McKee*, 801 F.2d 200, 202–03 (6th Cir.1986) (driver lost control without being hit); *Keller v. Truska*, 694 F.Supp. 1384 (E.D.Mo.1988), *aff'd, Roach v. City of Fredericktown*, 882 F.2d 294 (8th Cir.1989);[9] *Roach v. City of Fredericktown*, 693 F.Supp. 795 (E.D.Mo. 1988) (plaintiffs were driver and passengers; driver lost control without being hit and officer *accidentally* collided with car *after* it had crashed), *aff'd*, 882 F.2d 294 (8th Cir.1989); *Reed v. Allegan County*, 688 F.Supp. 1239 (W.D.Mich.1988) (driver hit tree after avoiding roadblock); *Allen v. Cook*, 668 F.Supp. 1460 (W.D.Oak.1987) (passenger in car that crashed without being hit); *Tagstrom v. Pottebaum*, 668 F.Supp. 1269 (N.D.Iowa 1987) (driver lost control without being hit), *rev'd on other grounds*, 857 F.2d 502 (8th Cir.1988). The cases cited by Defendant thus support nothing more than the proposition that the law was unsettled from 1986 to 1989 as to whether a seizure occurs when a fleeing suspect either loses control of his car or runs into a roadblock.

The inapplicability of these holdings to the facts of this case is quite obvious. It is clearly established, and was so in May, 1985, that a person may be seized either by

---

**6.** Further buttressing the conclusion that only the law regarding roadblocks was unsettled is the Court's explanation for granting certiorari: to resolve the conflict between the Fifth and Ninth Circuits on the issue of whether the use of a roadblock can constitute a seizure. *See Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 1380, 103 L.Ed.2d 628 (1989).

**7.** Because all of the cited cases were decided after May, 1985, an argument can be made that they are irrelevant to determining the state of law on the date of this incident. The better view is that they represent only circumstantial and not direct evidence of the state of the law at the time of the crash.

**8.** *Sherrill* is also legally irrelevant: the court addressed only a fourteenth amendment claim and did not discuss whether a fourth amendment seizure occurred. *See id.* at 1106–07.

**9.** At oral argument, Defendants' counsel pointed to *Keller* as his most factually similar case. In *Keller,* a high-speed pursuit case decided nearly

three and one-half years after the seizure of Plaintiff's decedent, the driver of the chased car crashed after losing control of his vehicle. Counsel stated during oral argument that the court held that one of the plaintiffs, a passenger in the chased vehicle, had no cause of action because only the driver was the focus of the police action. A plain reading of the case, however, indicates that the passenger had no fourth amendment claim because he was restrained by the driver *who lost control of the car* and not by the show of authority of the officer. *Id.* at 1387 (no seizure of either driver or passenger "when the only action by the police officer is pursuing a driver"). The plaintiff's status as a passenger was thus entirely irrelevant to the Court's holding.

If Defendants are implicitly arguing that Donald's status as a passenger alone renders the seizure issue unsettled, the argument is unpersuasive. *Cf. Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 43 n. 3, 66 L.Ed.2d 1 (1980).

a "show of authority" *or* through the use of "physical force". *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968); *United States v. Regan,* 687 F.2d 531, 535 (1st Cir.1982) (quoting *Terry* ); *Gomez v. Turner,* 672 F.2d 134, 139 (D.C.Cir.1982). The courts in Defendants' cited cases had differing opinions as to whether, *under the particular facts presented,* an officer caused the termination of the suspect's freedom of movement either through a show of authority or the application of physical force.

In the "driver loses control" situation, courts wrestled with the question of whether the occupant's movement was terminated by his own loss of control or by the officer's "show of authority" (i.e. the non-contact police chase itself). *See Galas v. McKee,* 801 F.2d at 203 (driver who loses control not seized by show of authority); *Reed v. Allegan County,* 688 F.Supp. at 1242 (same). The complaint here alleges only that Plaintiff's decedent was seized by physical force, not a show of authority. Thus, the "show of authority" cases are irrelevant.

In the roadblock situation, courts in the late 1980s disagreed on whether setting up a roadblock constituted the use of "physical force," or whether the driver terminated his own movement by failing to stop. *Compare Brower v. County of Inyo,* 817 F.2d 540 (9th Cir.1987) (no seizure) with *Jamieson by and through Jamieson,* 772 F.2d 1205, 1210 (5th Cir.1985) (seizure). This source of confusion is entirely absent under the facts alleged by Plaintiff. Plaintiff decedent's movement was allegedly terminated not by his failure to stop or by his loss of control, but rather by the application of what unquestionably can be described as nothing other than "physical force" (a police car) intentionally directed at him by Defendant Soesbe. No doubt, the courts in the above-listed cases would have held that this use of the car constituted the use of physical force and, therefore, that a seizure had occurred. The disagreement in the post-May, 1985 cases involving roadblocks is thus no more than peripheral to the Court's settled law inquiry.

Because none of the cases cited by Defendants address a situation where officers hurled an object at the car in which the plaintiff was sitting, they do not resolve the issue at hand—whether it was clearly established that the intentional use of a police vehicle to ram into a fleeing car and thereby cause it to crash constitutes a fourth amendment seizure. Defendants are doing nothing more than reciting a set of decisions involving clearly established law, the application of which was unsettled in those cases *precisely because* of the discrete factual scenarios presented there and entirely absent in this action. Just as a plaintiff cannot ignore a key event alleged in his complaint so as to take its allegations outside the realm of unsettled law and place it within clearly-established fourth amendment doctrine, Defendants simply cannot ignore a crucial distinguishing fact in Plaintiff's complaint and then assert that the law was unsettled. Their reliance on these cases is simply a legally unsupportable attempt to manipulate the doctrine of qualified immunity.

Defendants do not argue, nor can they argue, that any pre–1985 cases (or even any of the cases they cite) hold generally that the fourth amendment does not apply to *all* high-speed chases regardless of the method of apprehension or termination of movement, and, of course, the law was clearly established in May, 1985 that the fourth amendment is applicable to stops of automobiles by a show of authority. *See Colorado v. Bannister,* 449 U.S. 1, 101 S.Ct. 42, 43 n. 3, 66 L.Ed.2d 1 (1980) ("There can be no question that the stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment").

More importantly, the best direct evidence of the state of the law, factually similar cases decided *prior* to May, 1985, indicates that the law was clearly established that stopping automobiles through the use of physical force *does* constitute a seizure. The Court is aware of two pre–1985 cases where a federal court has found that an officer "seized" an occupant of a chased car by intentionally using physical force to run him off the road. *See Taylor*

*v. Mayone,* 599 F.Supp. 148, 152 & 155 (S.D.N.Y.1984), *aff'd,* 779 F.2d 39 (2nd Cir. 1985); *United States v. Matthews,* 417 F.Supp. 813, 817 (E.D.Pa.), *aff'd,* 547 F.2d 1165 (3rd Cir.1976). In addition, in the only case of which the Court is aware that involves a roadblock and was decided *prior* to the alleged incident, a federal district court ruled that the use of a roadblock *does* constitute a seizure. *See United States v. Manbeck,* 526 F.Supp. 1091, 1103 (D.S.C. 1981), *reversed and vacated in part on other grounds,* 744 F.2d 360 (4th Cir. 1984).[10] By comparison, the Court knows of *no* pre–1985 case holding that the intentional, successful use of physical force applied directly to an automobile in order to apprehend its occupants does not implicate the fourth amendment.

In summary, the facts as alleged by Plaintiff both render the cases cited by Defendants peripheral to the Court's settled law inquiry, and they place this action squarely within the principle of law acknowledged by all nine Justices in *Garner* and clearly established years before: a suspect is "seized" when an officer intentionally and successfully applies physical force by using a deadly weapon in order to terminate his movement. The law does not become unsettled merely because few courts have said what is obvious: intentionally using a car as a weapon to terminate a person's freedom of movement constitutes a "seizure," and the contours of the right are sufficiently clear such that a reasonable official would know that the definition of seizure is in no way dependent on the weapon used. *Cf. Andreu v. Sapp,* 919 F.2d 637, 643 & 643 n. 6 (11th Cir.1990) ("[w]hile qualified immunity protects a defendant from liability when the legal concepts that make up the plaintiff's claim are not clear, the defense cannot be manipulated by arguing that the common sense meaning of a familiar term is unclear mere-

ly because a court has yet to construe the term").

**C.** *Unreasonableness Clearly Established:*

■ Having determined that it was clearly established on May 8, 1985 that Defendants' conduct constituted a seizure, the Court must next determine whether it was clearly established that Defendants' conduct was unlawful in this instance. For, even if it is clearly established that the alleged events constituted a seizure, Defendants are entitled to qualified immunity unless it would have been apparent to a reasonable official in Defendants' position that the seizure was "unreasonable" and thus violative of the fourth amendment. *See Anderson v. Creighton,* 107 S.Ct. at 3040.[11]

*Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), decided six weeks prior to the alleged use of deadly force in this case, clearly established that the use of deadly force to apprehend a fleeing felon constitutes an unreasonable seizure unless the officer has probable cause to believe that the suspect poses a threat of serious bodily harm, either to the officer or to others. *Id.* 105 S.Ct. at 1701.

Applying this standard, the Court may summarily resolve the "unreasonableness" issue. Plaintiff's complaint alleges that, despite having stopped and released the driver on prior occasions, despite knowing his identity, his address, and his status as a fleeing nondangerous misdemeanant, despite knowing that he was only a fleeing, nondangerous misdemeanant, and despite knowing that Plaintiff's decedent had no outstanding warrants, Defendant Soesbe deliberately used his car to ram them off the road in a residential neighborhood at high speed, thereby causing Plaintiff decedent's death. In light of *Garner,* and given that no case law or statute on which a reasonable defendant could rely permitted

---

**10.** The Court's citation to *Manbeck* is not to demonstrate that the law regarding roadblocks was settled in May, 1985. Rather, it is to emphasize that Defendants have no basis for arguing that, prior to May, 1985, the differing views regarding roadblocks rendered unsettled the le-

gality of the particular conduct alleged in the complaint.

**11.** Defendants do not argue explicitly that it was not clearly established that the alleged conduct, if a seizure, was unreasonable.

**804**

the use of deadly force to apprehend a fleeing misdemeanant, the Court concludes without hesitation that it would have been apparent to a reasonable official in Defendants' position that Defendants' conduct violated Donald's clearly established fourth amendment right not to be subjected to this use of force [12] under these circumstances.[13]

For these reasons, Defendants are not entitled to qualified immunity at this stage of the proceedings.[14] Defendants' Motion for Summary Judgment is DENIED.

DONE and ORDERED.

12. Florida had long ago declared motor vehicles to be "dangerous instrumentalities," *see Meister v. Fisher,* 462 So.2d 1071, 1071 (Fla.1984); *Bellere v. Madsen,* 114 So.2d 619, 621 (Fla.1959); *Nelson v. Ziegler,* 89 So.2d 780, 783 (Fla.1956), and, in any event, it cannot reasonably be questioned that the use of a police car in the manner alleged in this case involves the application of deadly force. "Deadly force" has been defined as force which creates a "substantial risk of causing death or serious bodily harm." *Robinette v. Barnes,* 854 F.2d 909, 912 (6th Cir.1988). The force allegedly used in this instance clearly falls within this definition.

13. The Court notes that, had this incident occurred prior to the Supreme Court's decision in *Garner,* and were the occupants of the vehicle suspected of a felony, Defendants may have been entitled to immunity, not because it was unsettled that Defendants' conduct constituted a seizure, but rather because it was not clearly established that the use of deadly force in effectuating this seizure was "unreasonable." *See*

*Hamm v. Powell,* 874 F.2d 766, 771 (11th Cir. 1989) (defendants who used deadly force on fleeing felon three years prior to *Garner* decision entitled to immunity from fourth amendment excessive force claim), *modified on rehearing,* 893 F.2d 293 (11th Cir.1990); *Brown v. City of Clewiston,* 644 F.Supp. 1417, 1420–22 (S.D. Fla.1987) (Florida policeman who shot fleeing felon in 1979 did not violate clearly established constitutional right).

14. This Order does not conclusively resolve Defendants' entitlement to qualified immunity. If material factual issues relating to Defendants' conduct and the information they possessed remain in genuine dispute at the conclusion of trial, then the question of Defendants' entitlement to qualified immunity may be submitted to the jury by special interrogatory. *See Melear v. Spears,* 862 F.2d 1177, 1184 & 1188 (5th Cir.1989) (Higginbotham, J., concurring); *Brisk v. City of Miami Beach,* 726 F.Supp. 1305 (S.D. Fla.1989).